### WOMACK v. McMILLAN et al.
### No. 3763.

Court of Civil Appeals of Texas. Amarillo.
March 9, 1932.

Ratliff & Stewart, of Lubbock, and Scott, Watkins & Peters, of Fort Worth, for appellant.

E. A. Bills, of Littlefield, for appellees.

JACKSON, J.

This suit was instituted in the district court of Lamb county by the plaintiff, Z. T. Womack, against the defendants, Lon McMillan and C. L. Harless, to recover the principal, interest, and attorney's fees evidenced by certain vendor's lien notes executed by Lon McMillan, the payment of which was, after their execution, assumed by C. L. Harless.

The plaintiff alleges that on September 22, 1928, he conveyed to Lon McMillan labor 18 in league No. 675 of the Capitol Syndicate lands in Lamb county, retaining in said deed a vendor's lien to secure the payment of the notes sued on; that some time thereafter said land was conveyed by Lon McMillan to the defendant C. L. Harless, who, in the conveyance, assumed and agreed to pay the notes sued on according to their term, tenor, and effect. He alleges the accelerating clause in his notes and the default in the payment of interest and taxes, and that by virtue thereof he had elected to declare said notes due, asking judgment for his debt and foreclosure of his lien.

He also alleged that located on the land was a sand pit containing a high grade of building sand which was very valuable, that the defendant Harless is insolvent and is selling and disposing of the sand from said pit, and intends by such sales to completely dispose of all such sands before the plaintiff, in due course of law, can obtain a judgment and order of sale; that the removal of said building sand is a permanent injury to the land, and under the circumstances the plaintiff has no adequate remedy at law and will be irreparably injured by the removal of the sand. Plaintiff sought and was granted a temporary injunction restraining the defendant Harless from selling sand from said pit.

The defendant Lon McMillan answered by general demurrer and general denial.

The defendant C. L. Harless answered by general demurrer, special exceptions, general denial, and specially denied that he was in default in the payment of interest.

In a cross-action against the plaintiff he alleged that the temporary injunction was sued out without any grounds therefor and without probable cause, and that but for said restraining order, which was issued June 6, 1931, he could and would have sold great quantities of sand at and for the price of $2.50 per cubic yard; that the cost to him for the sale and delivery of the sand to purchasers would have been $1 per cubic yard, and his net profit on each cubic yard would have been $1.50 on the sand sold; that but for said injunction he would have sold to Jim Etter 100 cubic yards, to P. W. Walker 500 cubic yards, to C. O. Robbins 30 cubic yards, to H. H. Luke 100 cubic yards, to W. J. and A. C. Chesher 75 cubic yards, to a certain school district 150 cubic yards, to Cicero-Smith Lumber Company 20 cubic yards, to Cameron Lumber Company 100 cubic yards, to J. H. Arnett 50 cubic yards, and to the contractor for the new Santa Fé Depot at Littlefield, 1,000 cubic yards, on each yard of which plaintiff would have made a net profit of $1.50, or a total of $3,000, for which sum the defendant Harless asks judgment in his cross-action.

He does not seek to recover on the injunction bond, but relies solely on the common law for a judgment against plaintiff for the wrongful suing out of said injunction.

The case was tried before the court at the regular August term, 1931, without the intervention of a jury, on the 6th day of August, and judgment rendered that the plaintiff, Womack, take nothing by his suit and that the defendant Harless on his cross-action recover from the plaintiff the sum of $1,043.75, with interest at the rate of 6 per cent. per annum from said date and all costs of suit, from which judgment Z. T. Womack prosecutes this appeal.

The appellant assigns as error the action of the trial court in rendering judgment against him for the alleged profits the appellee claims he could have made from particular sales of sand during the two months' period the injunction was in force, because the evidence discloses, without contradiction, that the defendant still has the land and still has the sand, and there is no testimony showing that the land or the sand has depreciated in market value or that either would bring less on the market now than during the two months which the injunction was in force.

Mr. Harless, testifying in his own behalf, stated that the removal of the remainder of the sand in the sand pits would not have decreased the market value of the land; that the cost of selling and hauling the sand from the pits has diminished. The testimony indicates that at the time of the trial the opportunities were better for selling sand than

they had been for some time prior thereto. There is no testimony that the defendant lost any customers, or that the value of sand had depreciated, or that the value of the land had diminished. There is no testimony that the sand will not bring on the market the same price that it could have been sold for during the two months the injunction was in effect. There is no testimony to show that any of the sand in the pits was wasted or lost by reason of the injunction. The testimony is uncontroverted that the defendant still has the land and still has the sand.

"It may be stated as a general rule that compensation for losses sustained by a defendant which are the actual, natural and proximate result of the wrong committed by the restraining order while the latter is alive and operative, is the measure of damages to be assessed against bondsmen and that any actual damage suffered by reason of the wrongful suing out of the injunction is a proper subject of inquiry." 14 R. C. L. 482, § 184.

"It is a rule of very general application that only such damages are recoverable as are the actual, necessary and proximate result of the injunction during the time it was operative, but on the other hand damages of this character are, of course, recoverable." 32 C. J. 464, § 807.

"In estimating damages sustained by the improper issuance of an injunction, the courts proceed upon equitable grounds and while it is difficult to fix any precise rule or standard for determining the damages upon dissolution, it may be said generally that nothing will be allowed which is not the actual, natural and proximate result of the wrong committed. And, where no damages have been actually incurred, none should be assessed." 2 High on Injunctions (4th Ed.) 1613.

"Any actual damage which the appellee may have sustained by reason of the wrongful suing out of the injunction was a proper subject of inquiry under the plea in reconvention." Muller v. Landa, 31 Tex. 265, 98 Am. Dec. 529.

See, also Hicks v. Murphy et al. (Tex. Civ. App.) 172 S. W. 1135.

"Depreciation in the value of property from the loss of market or from a change in the market value during the operation of an injunction, is a very common damage caused to the party enjoined. * * * And, where delay in the sale of personal property is caused by an injunction and depreciation in the saleable value of the property is an incident of the delay, the depreciation is the measure of damages caused by the injunction." 1 Joyce on Injunctions, 320, § 195.

In a suit for damages for the wrongful issuance of a writ of injunction prohibiting the defendant from delivering lumber which it had sold to others, after allowing attorney's fees, the measure of damages is the "difference in the value of the lumber at the time of the suing out of the injunction and its value at the period of dissolution, with interest on the difference from the date of the suing out of the injunction." Thornton-Claney Lumber Co. v. J. M. O'Quin & Sons, 115 Miss. 857, 76 So. 732, 733. By the Supreme Court of Mississippi.

The Court of Appeals of Kentucky, in Standard Elkhorn Coal Co. v. Riggs et al., 219 Ky. 51, 292 S. W. 476, 477, says: "It will be noted that plaintiffs who were enjoined still owned and possessed their same rights in the timber when the injunction was dissolved as they did before it was issued. The only thing that happened to them was that they were prevented by the injunction from appropriating the timber in the manner they were doing for a space of 90 days. If there was any decline in the market values during that time, then plaintiffs were damaged to the extent of such decline, but they did not thereby have the right to hold appellant liable as for conversion, or upon any other theory based upon an absolute appropriation of plaintiffs' rights in and to it."

In Oklahoma Cotton Growers' Association et al. v. Groff, 135 Okl. 285, 275 P. 1032, the Supreme Court of Oklahoma says: "Where an injunction operates to delay the sale of personal property having a market value, and pending such delay depreciation occurs in the value of the property, such loss being occasioned by the injunction, the difference between the market value of the property at the time it would have been sold, but for the existence of the injunction, and the market value when the injunction no longer prevented a sale, and interest on the value of the property [between the date on which the property would have been sold but for the injunction to the date on which the injunction was finally discharged], is the measure of damages."

The appellee did not attempt by allegation or proof to recover vindictive damages, but, if he had, the law seems to be settled in Texas that punitive damages cannot be recovered for wrongfully suing out an injunction, no matter how malicious the motive may have been, Lomax v. Trull (Tex. Civ. App.) 232 S. W. 861, and the appellee was entitled to recover only compensation for the actual, natural and proximate result of the wrong committed, Thomas Brown v. W. L. Tyler et al., 34 Tex. 169.

In our opinion, the record in this case fails to show that the appellee was entitled to recover the damages awarded him on his cross-action.

The other assignments of error presented by appellant are decided adversely to his contention in Johnson et al. v. McMahan et al., 40 S.W.(2d) 920, in an opinion by Chief Jus-

tice Hall of this court, in which a writ of error was refused.

Inasmuch as the case must be reversed, we will suggest that the testimony offered by appellee to show specific sales to different purchasers, while the injunction was in effect, is indefinite, uncertain, and unsatisfactory as to some of the sales.

The judgment is reversed, and the cause remanded.