Hazel E. **BEAM** et al., Appellants,

v.

Ralph **VOSS**, Appellee.

No. 15942.

Court of Civil Appeals of Texas,
San Antonio.

June 7, 1978.

Supplemental Opinion June 14, 1978.

Daniel R. Rutherford, John L. Ray, San Antonio, for appellants.

Nicholas & Barrera, San Antonio, for appellee.

## OPINION

KLINGEMAN, Justice.

This suit arises out of a landlord-tenant relationship. Appellants, Hazel Beam and Victor Earl King, seek reversal of a money judgment received by Ralph Voss against them for wrongfully obtaining a temporary restraining order restraining appellee from conducting his business on the leased premises, and for converting appellee's personal property and improvements installed on such premises in connection with the business use of such property.

Trial was to a jury, who, in answer to the pertinent special issues here involved, found: (a) Voss did not permit the premises to be wasted during the term of the lease involved; (b) Voss sustained actual damages by reason of the issuance and service of the temporary restraining order restraining him from operating his business; (c) the sum of $1,500 would reasonably compensate Voss for damages sustained as a result of the issuance and service of the temporary restraining order; (d) appellants acted with

malice and without probable cause in causing the issuance of the temporary restraining order forcing Ralph Voss to close his business and vacate the property in question in May of 1975; (e) Voss is entitled to punitive damages in the amount of $25,000; (f) on or about January 1, 1976, and subsequent thereto, appellants converted certain personal property, equipment and business fixtures belonging to Voss listed in Exhibits DX–48 and DX–75; (g) the market value of the property found to be converted in Exhibit DX–48 at the place and time of the conversion was $27,000; (h) the market value of the property found to be converted in Exhibit DX–75 immediately before the conversion of the property was $3,406 and immediately after was $1,780.

Based upon the jury's findings, the court entered judgment that appellee recover from appellants the sum of $29,626, which sum represents: damages sustained by Voss as a result of the issuance and service of the temporary restraining order in the amount of $1,000; market value of the personal property belonging to Voss which was converted in the amount of $27,000; and diminution in the market value of the items of personal property belonging to Voss which were recovered by him in a damaged condition in the amount of $1,626. All relief sought by appellants was denied.

Appellant Hazel E. Beam is the owner of the land involved and the lessor in the lease to Voss. Appellant Victor Earl King is Beam's son-in-law who operated the shooting range on the premises involved after Voss vacated the premises. Appellee Ralph Voss is the lessee in the Beam lease and the operator of a public shooting range on the premises during the term of the lease.

The live pleadings on which appellants went to trial allege that Voss was leased the premises involved under which lease Voss was authorized to operate a public shooting range and a gun shop, and he also had hunting, fishing and grazing privileges; that lessee could sublet with the owner's consent and that the owner could come on the premises for purposes of inspection. Appellants asserted that Voss had made numerous subleases of hunting and grazing rights without the owner's consent; that Voss had denied the owner entry to the premises to inspect the premises and to fish in a small lake; that lessee made improvements on the premises without permission; and that lessee had caused waste to the premises. Appellants seek termination of the lease and possession of the property, and damages for waste.

Appellee filed a cross-action and counterclaim in which he acknowledged that he was the lessee under the lease which granted him certain rights and privileges; that pursuant to the provisions of such lease he installed and built valuable facilities on said premises for the purpose leased, and placed valuable personal property and supplies thereon; that from the inception of the lease he had sublet hunting and grazing privileges on said premises with the owner's knowledge and acquiescence; that his relationship with the owner, Beam, was excellent and to such an extent that the lease was renewed for an additional 5-year term at the end of the original 5-year term; that such good relationship continued until Beam's son-in-law, King, came into the picture; and that upon the advice of such son-in-law, Beam and King conspired to trump up alleged violations of the lease in order to obtain possession, and began to harass and obstruct appellee in the operation of his business; that appellants instituted this suit and wrongfully obtained a temporary restraining order which compelled appellee to close his business and caused him extensive damages; that after the lease terminated, appellants locked the gates and denied him access to the property, in violation of the terms of the lease, and converted his property to their own use. Appellee sought both actual and exemplary damages.

Appellants assert 36 points of error which complain basically that the trial court erred in entering judgment based upon certain jury findings because of the state of the evidence. We will discuss the points of error in different categories which we deem most expedient for purposes of this opinion.

Appellants' first point of error asserts that the trial court erred in entering judgment based upon the jury's findings in Special Issue No. 1,[1] because the finding is against the great weight and preponderance of the evidence. Appellants' second point of error asserts that the trial court erred in entering judgment based upon the failure of the jury to make a finding on Special Issue No. 4,[2] in that the failure of the jury to make such a finding is against the great weight and preponderance of the evidence.

Both of these points of error attack special issues on which appellants had the burden of proof. In both points of error, appellants assert that the trial court erred in entering judgment on the verdict because of the state of the evidence, which is a "no evidence" point of error. Our Supreme Court, in *Chemical Cleaning, Inc. v. Chemical Cleaning and Equipment Service, Inc.,* 462 S.W.2d 276 (Tex.1970), said:

A trial court may commit error in overruling a motion for new trial because vital jury findings are contrary to the great weight and preponderance of the evidence, but it does not for that reason commit error in rendering judgment on the verdict. Hence, a point of error which states that the trial court erred in rendering judgment on a verdict because of the state of the evidence—if adequate for any purpose—is only a 'no evidence' point of error.

■■■ Appellants also attempt to couch these points of error in terms of "factual insufficiency." However, it benefits appellants little to complain of the factual insufficiency of the jury's answers to special issues on which they had the burden of proof. The jury's failure to find affirma-tively on a special issue merely means that party proponent failed to meet his burden of proving the fact, and evidence is not required to support the negative answer. *C & R Transportation, Inc. v. Campbell,* 406 S.W.2d 191 (Tex.1966); *Prunty v. Post Oak Bank,* 493 S.W.2d 645, 646 (Tex.Civ.App.—Houston [14th Dist.] 1973, writ ref'd n. r. e.).[3]

■ While we regard appellants' first two points of error as "no evidence" points of error, we have concluded that the jury's findings are both legally and factually sufficient and that appellants have not met their burden of proof.

There is considerable evidence, both pro and con as to the matter of waste. Appellant Beam testified as to damages she had suffered and stated that the ranch was in good shape when Voss took over, but that during the term of the lease it had been neglected. John Martin, a general contractor, who had been asked by appellants' attorney to go on the ranch and estimate the damages, testified as to the damages he observed. However, he also testified that when he went back to the ranch with Voss thereafter, almost everything had been fixed. Victor King, Beam's son-in-law, and one of the appellants, also testified as to damages to the leasehold, but admitted that he himself had done some damages to the leased premises.

The jury also heard considerable testimony contradicting the testimony of appellants' witnesses. George Waitz, the lessee of the premises before Voss, testified that the house was old and rundown, that the premises were in bad shape, the well dry, the water trough in disrepair, and many gates in bad shape. James Barlow, who helped Voss build the shooting range on the

---

1. In Special Issue No. 1, the jury found that Voss did not permit appellants' premises to be wasted during the term of the lease agreement.

2. Special Issue No. 4 which inquired as to the amount of damages from such waste was not answered.

3. The hereinabove discussion as to "legal insufficiency" and "factual insufficiency" points of error pertain to a great number of appellants' points of error, all of which complain that the trial court erred in entering judgment based upon jury findings [Points of Error Nos. 1, 2, 7, 8, 9, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 30, 31, 32, 33, 34 and 35] and while these points of error will be separately discussed, we will not repeat the discussion herein as to "legal insufficiency" and "factual insufficiency" points of error, except perhaps by reference.

leased premises, testified that the house was in bad shape and the barns rundown.

Appellee testified in considerable detail as to the state of the property when he took it over, which indicated that the premises were in a state of disrepair and in poor condition. He also testified in considerable detail as to the extensive repairs he made on the place and various improvements he made on the premises in order to make the premises usable.

It should be noted that the premises were leased to Voss for the explicit purpose of utilizing same as a public shooting range, a gun shop, and for hunting, fishing, and grazing purposes.

■■■ While the evidence is conflicting as to the damages to the leased premises, there is testimony that Voss restored any alleged damages done by him, and one of the appellants' own witnesses, John Martin, testified that when he went back to the property after his original inspection, almost everything had been fixed. The jury was the judge of the credibility of the witnesses and the weight to be given their testimony. Under the evidence, it cannot be said that there is no evidence to support the jury's answer to Special Issue No. 1, or that such answer is against the great weight and preponderance of the evidence.

■■ The jury having found that there was no waste, did not answer Special Issue No. 4, inquiring as to damages suffered through such waste. Appellants' second point of error complains that the trial court erred in entering judgment based upon the failure of the jury to make any finding on Special Issue No. 4, in that the failure of the jury to make such finding is against the great weight and preponderance of the evidence. Without reiterating the hereinbefore discussion as to "no evidence" and "factually insufficient" points of error, we hold that appellants' Points of Error Nos. 1 and 2 are both without merit and both are overruled.

Appellants' Points of Error Nos. 3 through 16 pertain to the jury's answers to Special Issues Nos. 5 and 6.[4]

Some of these points of error complain that (a) the only supporting evidence is hearsay; (b) the only supporting evidence is uncertain and speculative; (c) the only supporting evidence violates the best evidence rule; (d) the only supporting evidence was based on attorneys' fees, an element not recoverable. The rest of such points of error complain that there is no evidence to support the jury's answer to Special Issues 5 and 6, that there is insufficient evidence, and that such answers are against the great weight and preponderance of the evidence.

It is undisputed that appellee was shut down for three days because of the issuance of the temporary restraining order. Voss testified that he lost about $3,000 during the three days he was shut down. His testimony was supported by the testimony of appellant King who operated the shooting range after taking over from Voss. King testified that in his operations he made well over $1,000 a day; that from an observation of Voss's business when Voss was operating the shooting range and the volume of Voss's business, that Voss likewise would be making at least that much a day, and that based upon his knowledge and experience and his observation and a comparison of his business to Voss's business, Voss would have even made more than this amount a day.

Appellants' complaint as to the best evidence rule pertains to Defendant's Exhibit No. 47, which is a photocopy of a letter written to Voss by the Southwestern Research Shooting Club, canceling its meetings at the place because it could not get in the premises because the range was closed pursuant to the temporary restraining order on the day the club reserved the range. Irrespective of the contents of this letter,

---

**4.** In answer to Special Issue No. 5, the jury found that Voss sustained actual damages by reason of the issuance and service of the temporary restraining order restraining him from operating his business, and in Special Issue No.

6 found that the sum of $1,500 would reasonably compensate Voss for the damages suffered by him as a result of the issuance of such temporary restraining order.

Voss himself testified that Southwestern Research Institute canceled their meetings there because they could not get on the shooting range. There is other competent evidence to support the jury's finding.

Appellants' complaint that the judgment is based upon attorney's fees is apparently predicated on some testimony in the record by Voss that he had paid attorneys about $3,000. We find nothing in the record to support appellants' contention that the judgment is based in any part upon attorney's fees.

There are numerous cases holding that where a party has been enjoined and has suffered damages by reason of the wrongful issuance of such injunction, he may recover the actual amount of his damages. *Cone v. City of Lubbock,* 431 S.W.2d 639 (Tex.Civ.App.—Amarillo 1968, writ ref'd n. r. e.); *Womack v. McMillan,* 47 S.W.2d 437 (Tex.Civ.App.—Amarillo 1932, no writ); *Johnson v. McMahan,* 40 S.W.2d 920 (Tex. Civ.App.—Amarillo 1931, writ ref'd).

■ A loss occasioned by an interference with one's business from the actionable conduct of another is a proper element of damages, and profits lost as a result of such interference are properly recoverable. *Southwest Battery Corp. v. Owen,* 131 Tex. 423, 115 S.W.2d 1097 (1938); *Cain v. Fontana,* 423 S.W.2d 134 (Tex.Civ.App.—San Antonio 1967, writ ref'd n. r. e.).

■ The jury found that Voss suffered damages in the amount of $1,500 from the issuance of the temporary restraining order, and the trial court entered judgment of $1,000. There is ample credible probative evidence to uphold the jury's finding and the court's award, including Appellant King's own testimony, which would support an award of $3,000. Appellants' Points of Error Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 and 16 are all without merit and all are overruled.

■ Appellants' Points of Error Nos. 17 through 22 pertain to Special Issue No. 7.[5] By such points of error, appellants assert that there is no evidence and insufficient evidence to support the jury's answer to such special issue and that the jury's answer is against the great weight and preponderance of the evidence.[6]

The evidence as to malice, like the other evidence, is conflicting. There is testimony that Beam wanted to get appellee off the leased premises before the term expired; that King stated that he had asked Beam to file the suit; that King, in one instance, reported theft of a septic tank which was not on the leased premises when Voss made the lease. A former employee on the leased premises testified that he never heard Beam complain of Voss's operation of the business or any damage to the property until after King arrived, but that after King arrived the relationship deteriorated; that during the term of the lease King and his wife wanted to locate a trailer house on the leased premises, and, after some discussion, King told Voss that the trailer could be placed anywhere King decided.

Voss testified extensively with regard to damages to his property, which he attributed to King, and testified that after he reacquired possession of the leased premises after the restraining order, his property was in a big mess.

Beam admitted that she wanted to get out of the existing lease or to change the terms of the said lease under which appellee was to increase his rentals to Beam, and also pay her a percentage of his profits on the business. Appellee testified that in one instance King slammed the lease down on his desk and said "I am terminating your lease right now!"; and that Beam stated that she was going to break him if he didn't get off the place.

**5.** In answer to Special Issue No. 7, the jury found that Beam and King acted with malice and without probable cause in causing the issuance of a temporary restraining order forcing Voss to close his business and vacate the property in May of 1975.

**6.** Like the other points of error hereinbefore discussed, all these points of error assert that the trial court erred in entering judgment on such special issue because of the state of the evidence. Such points of error are subject to the same discussion hereinbefore set forth.

The jury's answer to such special issue is supported by evidence that is both legally and factually sufficient. Appellants' Points of Error Nos. 16, 17, 18, 19, 20, 21, and 22, are all overruled.

Appellants' Points of Error Nos. 23 through 32 pertain to conversion. By such points of error, appellants complain that the trial court erred in entering judgment on Special Issues Nos. 9 and 10 [7] because: (a) the only supporting evidence is hearsay; (b) such issues are supported by no evidence; (c) such issues are against the great weight and preponderance of the evidence; (d) such issues are supported by insufficient evidence; (e) Special Issue No. 9 should not have been submitted; (f) the evidence supporting Special Issue No. 10 was a shorthand rendition made by one not a party and was not present memory refreshed.

Charles Wade Melvin, Jr., was an employee of appellee who lived on the subject property during the existence of the lease. Melvin testified that they closed up appellee's place of business on December 31, 1975, the last day of the lease term, and on that date he did not notice any damages to the property of appellee; that all of appellee's personal property was in good order, intact and accounted for, and that the premises were properly secured when he left on December 31, 1975. He stated that on the next day at approximately 10 a.m., he and his dad went out to the premises to begin the removal of appellee's property, but that he could not get on the property because there was a new colored chain and a large padlock on the gate and a posted "Keep Out" sign on the gate; that he again tried to get on the property on January 4, 1976, but the gate was still padlocked; that later, after a court order was issued giving appellee the right to enter the property and remove and take possession of his property, he went to the property of appellee, and that all of appellee's ammunition and quite a few of his tools were gone. The father of

Melvin, Jr., corroborated the testimony of his son.

Appellee testified that all of the items listed in the Exhibits DX–48 and DX–75 were in his possession and subject to his control on the leased premises on December 31, 1975; that he left town on December 31, 1975, and January 4, 1976, was the first time he attempted to get back on the property; that he was prevented from getting on the property because his lock had been replaced and there was a new lock thereon that he had never seen before; that there was a sign saying "Posted—Keep Out"; that, thereafter, he called Mrs. Beam and asked what was going on and she told him that he couldn't have anything; that he had waited too long. The lease provided that appellee could remove his property and belongings not later than sixty days after the lease expired.

Appellee testified that the next time he went to the property was on January 17, 1976, accompanied by a deputy sheriff, but at such time they were unable to get on the property and there was a letter from appellants' attorney posted on the gate advising that all trespassers would be prosecuted. He testified that the first time he was able to get back on the property was on January 21, 1976, and that at such time he found his property in a state of disarray, either missing or damaged, that the sheriff was called and a report made.

King admitted that he had placed the lock on the gate, but was uncertain as to the day.

■ To constitute a conversion, it is not necessary that there be a manual taking of the property in question. The unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights, is in law a conversion. *Waisath v. Lack's Stores, Inc.,* 474 S.W.2d 444 (Tex.1971); *Allen v.*

7. In Answer to Special Issue No. 9, the jury found that on or about January 1, 1976, and subsequent thereto, Beam and King converted certain personal property, equipment and business facilities belonging to Voss described in Exhibits DX–48 and DX–75. In answer to Special Issue No. 10, the jury found that the market value of the property shown to be converted in DX–48 at the time and place of conversion was $27,000.

*Alison Mortgage Investment Trust,* 548 S.W.2d 783 (Tex.Civ.App.—San Antonio 1977, no writ); *Cox's Bakeries of North Dakota, Inc. v. Homart Development Corp.,* 515 S.W.2d 326 (Tex.Civ.App.—Dallas 1974, no writ); *Fenberg v. Fenberg,* 307 S.W.2d 139 (Tex.Civ.App.—Amarillo 1957, no writ); *American Surety Co. of New York v. Hill County,* 254 S.W. 241 (Tex.Civ.App.—Dallas 1923) *aff'd* 267 S.W. 265 (Tex. Comm'n App. 1924, opinion adopted).

■ The jury's answer to Special Issue No. 9 is supported by competent probative evidence that it is both legally and factually sufficient.

■ The jury found the market value of the property converted in Exhibit DX–48 to be $27,000. Appellants assert that the only supporting evidence is hearsay, and that the evidence supporting such special issue was a shorthand rendition made by one not a party and was not present memory refreshed. Such contention seems to be premised on appellants' contention that Exhibit DX–48 was not prepared by appellee but was manually prepared by his attorney. Appellee testified that it was his list. In any event, after the exhibit was introduced into evidence, appellants' attorney conducted an extensive cross-examination of appellee as to the items listed on such exhibit. Such list, in addition to listing the various items involved, has values shown after the respective items, and appellee testified that the values therein shown were the fair and reasonable market value of the respective items in Bexar County on the date of the conversion. He further testified that the value of all of the items was $29,599.50. No attempt was made by appellants to rebut or refute the values placed on the items listed in such exhibit. The jury found the values of such property to be $27,000.

The jury's answer to Special Issue No. 10 is supported by sufficient competent probative evidence.

Appellants' Points of Error Nos. 23, 24, 25, 26, 27, 28, 29, 30, 31, and 32, are without merit and all are overruled.

Appellants' Points of Error Nos. 33, 34, and 35 assert that the trial court erred in entering judgment on Special Issue No. 11 [8] because of the state of the evidence.

■ The general rule for measuring damages to personalty is the difference in the market value immediately before and immediately after injury to such property at the place where the damages were occasioned. *Pasadena State Bank v. Isaac,* 149 Tex. 47, 228 S.W.2d 127 (1950); *Jalco, Inc. v. Tool Traders, Inc.,* 535 S.W.2d 898 (Tex. Civ.App.—Houston [1st Dist.] 1976, no writ).

■ We find no evidence in the record as to either the value of property immediately before the injury or as to the value of the property immediately after the injury. There is nothing in the record showing that the value of the property was $3,406 at the time of conversion, and that the value of the property was $1,780 immediately after the conversion. Appellee did testify that the difference in the value of his property before and after its conversion was $3,000.

Appellee, in his brief, although contending that there is some evidence to support the jury's answer, indicates a willingness upon suggestion of remittitur to make a proper remittance of the sum of $1,626, if the case is affirmed.

We have concluded that the judgment is excessive in the amount of $1,626 and that a remittitur as to this amount is proper.

Appellants' last point of error complains that the trial court erred in overruling their motion for new trial because the cumulative effect of error was so substantial as to deny appellants a fair trial. We have thoroughly discussed all of the errors urged by appellants, the testimony in the record, and the applicable law, and we overrule appellants'

8. Special Issue No. 11 queried the jury as to the market value on the converted property listed in DX–75 before and after the date of conversion. DX–75 involves property which was recovered by appellee but supposedly in a damaged condition. The jury found the before market value to be $3,406, and the after market value to be $1,780, a difference of $1,626. The judgment includes such sum of $1,626.

**422**

last point of error without further discussion.

 By one cross-point, appellee asserts that the trial court erred in failing to enter judgment on the finding of the jury to Special Issue No. 8 [punitive damage],[9] and asks this court to reform the judgment of the trial court so as to include the sum of $25,000 as punitive damages.

Appellee argues in his cross-point that the facts of this case justify damages which are punitive in nature. Appellee cites no Texas decisions permitting punitive damages in this situation nor have we been able to find any.

There are numerous decisions holding that where a party has been enjoined and suffers damages by reason of the wrongful issuance of an injunction, he may recover the actual amount of his damages. *Cone v. City of Lubbock, supra; Womack v. McMillan, supra;* 31 Tex.Jur.2d, *Injunctions* § 233 at 363 (1962).

In *Womack v. McMillan, supra,* the court said that it is a rule of general application that only such damages are recoverable as are the actual, necessary and proximate result of the injunction during the time it was operative. The court also stated:

> The appellee did not attempt by allegation or proof to recover vindictive damages, but, if he had, the law seems to be settled in Texas that punitive damages cannot be recovered for wrongfully suing out an injunction, no matter how malicious the motive may have been.

In *Lomax v. Trull,* 232 S.W. 861 (Tex.Civ. App.—Dallas 1921, writ dism'd), the court held that punitive damages are not recoverable for wrongfully suing out a writ of injunction no matter how improper or malicious the motive.

The trial court properly disregarded the jury's finding and properly denied punitive damages. Appellee's cross-point is overruled.

As hereinbefore discussed, we have concluded that the verdict and judgment is

excessive in the amount of $1,626, but that in all other matters the judgment is correct.

The judgment of the trial court, therefore, will be affirmed if the appellee will file in this court within twenty-five (25) days hereof, a remittitur in writing in the amount of $1,626; otherwise, said judgment will be reversed and remanded for a new trial.

Affirmed on condition of remittitur.

MURRAY, J., did not participate in the disposition of this appeal.

### SUPPLEMENTAL OPINION

Appellee having filed in writing the remittitur as suggested in our original opinion, it is ORDERED that the judgment, as reduced by the remittitur, be in all things affirmed.

---

**9.** In Special Issue No. 8, the jury awarded appellee $25,000 as punitive damages, but the judgment does not include any amount for punitive damages.