Susan Parrish FORNEY, Appellant,

v.

William H. FORNEY, Sr., et al., Appellees.

No. 01–82–0421–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 23, 1983.

Rehearing Denied Aug. 4, 1983.

Percy Foreman, Houston, for appellant.

Jack O'Neil, Houston, for appellees.

Before WARREN, BASS and BULL-OCK, JJ.

## OPINION

BASS, Justice.

This is an appeal from an adverse jury verdict on a bill of review and from the granting of a partial summary judgment dismissing appellant's suit for partition of community property.

The judgment is affirmed.

Appellant and appellee, William H. Forney, Sr. ("Forney, Sr."), were married on September 22, 1974, and divorced on November 10, 1978. The divorce decree recited that both parties appeared before the court and requested that the court approve a property settlement agreement ("the PSA") they had entered into for the division of their community property. The decree further recited that the court found the PSA to be fair and reasonable, and ordered it incorporated into the divorce decree. The court further ordered that appellant's action against third party cross-respondents in the divorce action, including but not limited to, Bill Forney, Inc., Viking Resources, Inc., and B.J. McCombs, be dismissed with prejudice. Forney, Sr. also entered into a support payment agreement whereby he agreed to pay appellant $15,000 on October 31, 1978, and $2,000 per month for 121 months, beginning on December 1, 1978.

The PSA recited that it was the "desire of both parties to settle their property rights by mutual agreement and make a voluntary partition of the community estate of their marriage, and to release all claims either party may have at present or may hereafter have against the other, or his or her separate estate." It was further stipulated that appellant was to be awarded title to property enumerated on Schedule A (which included all personal property, jewelry and clothing in her possession, all cash on hand and on deposit in appellant's name, and $25,000 cash). Forney, Sr. was to be awarded title to all property enumerated in Schedule B (which included, in pertinent part, all real property of the parties, all stock, securities, and certificates of deposit, "any and all working interests, undivided

interests, and any and all interests whatsoever in any and all oil and gas properties," and any and all property, real and personal, not specifically set aside to appellant in Schedule A).

The PSA stated that for purposes of partitioning the community estate, appellant, by executing the agreement, conveyed to Forney, Sr. all of her undivided interest in and to all the property described in Schedule B, free and clear of any claims she might have other than as specifically contracted and provided for in the PSA, such that the property listed in Schedule B should become Forney, Sr.'s separate property.

Appellant further agreed to release all lis pendens notices filed against property of the parties, and to deliver to Forney, Sr.'s attorneys motions and orders dismissing with prejudice two causes of action instituted against Forney, Sr., and dismissing with prejudice all defendants and third-party defendants named in those causes.

The PSA stipulated that appellant, by executing the agreement, acknowledged that she had reviewed the provisions with her attorneys and that she understood the contents of the agreement. The stipulation included her agreement that she had had sufficient time to conduct her own investigation, that depositions had been taken, an audit had been performed, and her accountants had reviewed the property of the parties, "all of which had been fully and completely explained to [appellant] by her attorneys, to [her] full satisfaction." The stipulation continued:

> [Appellant] acknowledges that it is with her full knowledge and understanding of the property and estate of the parties that she is entering into this agreement and she feels that this is a fair and equitable division of the property ... and is in her best interests. [Appellant] further understands that in executing this Agreement she will not be entitled to any other property or money acquired by Petitioner, and that she has relied solely and completely on her own judgment in executing this Agreement;

that she has entered into this Agreement of her own free will and volition and that she has relied upon no representation made by any other party hereto but has entered into such Agreement based solely upon her independent and carefully considered judgment; and that she has had the opportunity to seek the advice of counsel before entering into this Agreement, and that she fully understands that this is a full, complete, and final property settlement agreement.

The PSA contained a paragraph specifically referring to Forney Sr's. two corporations, Bill Forney, Inc., and Viking Resources Corporation ("Viking"). In the paragraph it was stipulated that by executing the agreement, appellant represented that she understood that Forney, Sr., by the nature of the oil and gas business in which he was engaged, could make or lose large sums of money quickly, and might, at the time the agreement was entered into, be holding real property and leases which might increase or decrease in value very quickly:

> By executing this Agreement, [appellant] further represents that the acquisition by [Forney, Sr.], Bill Forney, Inc., and/or Viking Resources Corporation, of substantial wealth ... founded upon property now held by [Forney, Sr.], Bill Forney, Inc., Viking Resources Corporation or anyone else, or founded upon property hereafter acquired by [Forney, Sr.], Bill Forney, Inc., Viking Resources Corporation or anyone else, shall in no way constitute good cause for any attempt by [appellant] to reopen or set aside this Agreement or the decree of divorce ... in this case.

The PSA was signed and approved by both parties to the divorce action, as well as by their attorneys.

A Mutual Release Agreement ("the Release"), also entered into by the parties in conjunction with their execution of the PSA, provided that appellant would release and fully discharge Forney, Sr., and all third-party cross-respondents (including Bill Forney, Inc., and B.J. McCombs) in

cause no. 1,139,855, styled *In the Matter of the Marriage William H. Forney, Sr., and Susan Parrish Forney,* in cause no. 78–38893, styled *Susan Parrish Forney v. William H. Forney, Sr.,* and in cause no. 78–38894, styled *Susan Parrish Forney v. William H. Forney, Sr., and in the Matter of the Marriage of Susan Parrish Forney and William H. Forney, Sr.*

It was further stipulated that in consideration of the covenants, releases, and payments under the terms of the PSA, and in consideration of the periodic payments awarded in the divorce action, appellant agreed to release Forney, Sr., Viking, and all third-party defendants and third-party cross-respondents previously designated in the Release, from all obligations of any kind or character which were or could have been asserted by appellant in any of the previously-enumerated causes of action.

The Release contained the stipulation that the parties warranted that they had fully informed themselves as to the terms, contents, conditions, and effect of the Release, and that they were relying solely and completely upon their own informed judgment in executing the Release, having had the opportunity to seek the advice of counsel before entering into it.

Appellant filed her third amended bill of review on September 14, 1979, and her first supplemental petition on November 13, 1981. Her claims consisted of the following:

(1) A bill of review based upon extrinsic fraud, and duress and coercion, the latter based in part on appellant's allegation that Forney, Sr. threatened to kill her unless she settled the divorce;

(2) A suit to partition the Live Oak properties, claimed by appellant to be community property and to have been undisposed of in the divorce;

(3) A collateral attack on the divorce decree, seeking to rerecover one-half of the 23.4375% working interest on the ground that Forney, Sr. made an "excessive and capricious" gift of the working interest to Viking;

(4) A collateral attack on the divorce decree, seeking to impose a constructive trust in favor of appellant upon one-half of the working interest and overriding royalty interest to prevent "unjust enrichment," on the ground that Forney, Sr. breached his fiduciary duty to appellant by concealing the interests during the marriage;

(5) A cause of action seeking to set aside the divorce decree and the PSA as void, on the ground that when William H. Forney, Sr. procured dismissal of criminal charges against appellant at the instance of appellant's attorneys, he committed the criminal offense of "compounding."

In her bill of review, appellant sought to have the divorce decree, PSA, support payment agreement, and Release, specifically any releases she had executed in favor of Viking (now Forney Oil Corporation), set aside due to the fraud, concealments, misrepresentations, duress, and coercion exerted by Forney, Sr.

Appellant alleged that Forney, Sr. had concealed an "enormously valuable" oil and gas find in Live Oak County, Texas, of which Forney, Sr. had, during the marriage, earned a 23.4375% working interest and a .7% overriding royalty interest in the Live Oak lease. She alleged that but for Forney, Sr.'s coercion and extrinsic fraud, she would have proceeded with discovery, would have further investigated the records concerning the Live Oak County property, and would have demanded her one-half interest. She alleged that due to the duress or extrinsic fraud, she allowed the time to lapse for filing a motion for new trial, or for perfecting appeal of the divorce judgment.

By partial summary judgment order dated April 13, 1981, appellant's suit for partition was dismissed. The trial court based its grant of the summary judgment on the fact that pleadings in the divorce action established as a matter of law that the Live Oak County properties were not omitted from the divorce action and were thus not

subject to partition. Furthermore, the trial court, in reviewing the PSA and divorce decree, considered matters asserted in the partition suit barred by *res judicata.*

At trial on the bill of review, evidence was introduced that prior to appellant's and Forney Sr.'s marriage, Forney, Sr. created two irrevocable trusts for the benefit of his six children by a previous marriage. Forney, Sr.'s accountant testified that both trusts were created for tax and estate planning purposes. Viking was incorporated on June 28, 1976, and was capitalized with $1,000.00. Trust no. 1 acquired ninety percent of the stock, and Bill Forney, Jr. acquired the remaining ten percent with his own funds. Forney, Sr. held 900 shares as trustee for trust no. 1.

Evidence was also introduced that Forney, Sr. and B.J. McCombs had a partnership in which Forney, Sr. would locate oil and gas acreage available for leasing and development. McCombs furnished the financing if they agreed that the property warranted development. Forney, Sr. sold interests to investors in order to repay lease acquisition costs, and McCombs and Forney, Sr. would split any remaining interest in the leaseholds.

In 1976, Viking and McCombs entered into a partnership arrangement whereby McCombs paid Viking's overhead and Viking provided the evaluation and acquisition of oil and gas properties. Viking began acquiring leases in Live Oak County, with financing arranged by McCombs. McCombs owned the leases until Viking sold enough working interests to pay off the acquisition costs. The explanation for Forney, Sr.'s discontinuance of involvement in the partnership in his individual capacity was that he had become involved in a major lawsuit involving great potential personal liability.

After Forney, Sr. instituted divorce proceedings, McCombs' attorney requested that Viking convey the leases to McCombs in order to avoid involving the leases in the divorce action. Viking assigned the leases to McCombs' attorney in trust for McCombs on September 8, 1977, and on October 17, 1977. Viking thereafter sold sufficient working interests to repay acquisition costs, and Viking and McCombs split the remaining working interest. In August of 1978, the trustee for McCombs assigned a 23.4375% working interest to Viking in consideration for services rendered by Viking in locating and acquiring the leases, and in selling working interest. On December 28, 1978, the trustee assigned a .7% overriding royalty interest to Forney, Sr., effective as of August 16, 1978. Both Forney, Sr. and his accountant testified that the .7% interest belonged to Viking, but had been assigned to Forney, Sr. for capital gains tax purposes, and was later assigned to Bill Forney, Inc.

During the fourteen months in which the divorce action was pending, appellant's attorneys and her accountant were provided with Forney Sr.'s deposition and records, as well as those of Viking and Bill Forney, Inc. Appellant's attorneys and accountant were able to examine all requested records for thirty days. Appellant, her attorneys, and accountant were also provided with evidence of the Forney, Sr.–McCombs partnership. They had evidence, in the form of Forney, Sr.'s deposition and the records produced, that Viking held the Live Oak County leases in which appellant claims an interest. Forney, Sr. disclosed the existence of the leases, and provided appellant's attorneys and accountant with written descriptions. Appellant and her attorneys also had information that in September and October of 1977 Viking transferred the Live Oak County leases to McCombs' trustee.

Furthermore, prior to settlement of the divorce action, Bill Forney, Inc. filed applications with the Railroad Commission to drill three wells on the Live Oak leaseholds. One of appellant's attorneys testified that he did not check with the Railroad Commission prior to settling the divorce case. The assignment of the 23.4375% working interest to Viking was also recorded in the public records of Live Oak County prior to the settling of the divorce action.

While appellant introduced evidence suggesting that at the time the settlement agreement was entered into Forney, Sr. knew that one of the wells drilled on the Live Oak County leasehold was "very valuable," appellees introduced expert testimony at trial of the bill of review directly refuting such contentions. Appellees introduced testimony that as of the date the divorce was granted there had been no discovery made on the Live Oak County leasehold, and that it was not known at that time whether the so-called "discovery well" would produce anything. As of October, 1981, Viking's interest in the Live Oak County leases was valued at approximately $1,200,000.00.

At the close of evidence, the case was submitted to the jury on eight special issues, three of which were conditional. All issues were decided adversely to appellant. The court received the jury's findings and ordered that appellant take nothing. The special issues submitted to the jury and answered adversely to appellant are as follows:

Special Issue No. 1:

Do you find from a preponderance of the evidence that during the course of the marriage the defendant, William H. Forney, Sr., threatened to kill or physically injure the plaintiff, Susan Parrish Forney, if she did not agree to his proposed community property settlement and to the judgment to be entered by the court?

[We do not.]

Special Issue No. 3:

Do you find from a preponderance of the evidence that William H. Forney, Sr., B.J. McCombs and C.R. Eyster entered into a civil conspiracy to prevent the plaintiff, Susan Parrish Forney, from presenting to the court her claim for a community interest in the Live Oak County oil and gas properties?

[We do not.]

Special Issue No. 5:

Do you find from a preponderance of the evidence that William H. Forney, Sr. promised to Susan Parrish Forney that if she would approve the property settle-

ment agreement proposed by him and the judgment to be entered by the Court incorporating such property settlement agreement, he would procure a dismissal of the criminal charge pending against her?

[We do not.]

Special Issue No. 7:

Do you find from a preponderance of the evidence that William H. Forney's gift to Viking Resources of the community interest in the oil and gas properties in Live Oak County was an excessive or capricious gift? A "capricious" or "excessive" gift is a gift so large in relation to the donor's total estate as to amount to a willful and unreasonable action in disregard of the facts and circumstances existing at the time. An "excessive" gift is one greater than what is usual or proper, an unreasonably large gift under the existing facts and circumstances.

[We do not.]

Special Issue No. 8:

Do you find from a preponderance of the evidence that Susan Parrish Forney's failure to present her claim for a community interest in oil and gas properties in Live Oak County was unmixed with any negligence or fault on her part, or on the part of her attorneys, which of itself caused her to fail to present her claim for a community interest in the oil and gas properties in Live Oak County?

[We do not.]

°Appellant raises fourteen points of error on appeal:

(1) The trial court erred in denying appellant an undivided one-half interest in the 23.4375% working interest and the .7% royalty interest in the Live Oak County mineral leases for the reason that these property interests constituted community property and were omitted from the property settlement provisions of the divorce judgment and the property settlement agreement upon which the divorce judgment was based.

(2) The trial court erred in refusing to enter a judgment notwithstanding the

verdict awarding appellant an undivided one-half interest in the 23.4375% working interest in the Live Oak County oil and gas leases acquired by Viking Resources Corporation from trustee C.R. Eyster.

(3) The trial court erred in refusing to enter a judgment notwithstanding the verdict awarding appellant an undivided one-half interest in the .7% overriding royalty in the mineral interests acquired from the Live Oak County oil and gas leases and transferred by trustee C.R. Eyster to Bill Forney, Sr.

(4) The trial court erred in refusing to submit appellant's requested special issue no. 1 in its charge to the jury: "Do you find from the preponderance of the evidence that B.J. McCombs and William H. Forney, Sr. agreed that all oil and gas leases in Live Oak County, Texas, acquired with financing arranged by McCombs would be the property of McCombs unless Forney sold interests in the leases sufficient to repay the money used to acquire the leases, in which event the interests remaining in the leases would be divided equally between McCombs and Forney?

(5) The trial court erred in entering a judgment denying plaintiff all relief when the undisputed evidence established appellant's right to have a constructive trust decreed in the Live Oak County mineral interests conveyed by trustee Eyster, to Viking Resources, together with an equitable partition and an accounting.

(6) The trial court erred in entering a judgment denying appellant all relief when the undisputed evidence established appellant's right to have a constructive trust decreed in the Live Oak County mineral interests conveyed by Forney, Sr. to Forney Oil.

(7) The trial court erred in denying the bill of review for the reason that the undisputed evidence establishes that a part of the consideration for the property settlement agreement forming the basis of the provisions respecting the

community property of appellant and Forney, Sr. included in the judgment was an agreement to secure the dismissal of criminal charges against appellant.

(8) The jury's answer to special issue 7 is supported by no credible evidence, or, in the alternative, the answer is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

(9) The jury's answer to special issue 8 is so contrary to the great weight and preponderance of the evidence as to be clearly wrong.

(10) The trial court erred in including in his judgment an order requiring William H. Forney, Sr. to make monthly payments required by the property settlement agreement and the divorce judgment by mailing said payments to the offices of appellant's attorneys, Able & Coleman, P.C., 4350 First City Tower, Houston, Texas 77002, for the reason that such order constituted a change in the previous judgment and modification of the property settlement agreement, and was not authorized by the pleading.

(11) The trial court erred when, in response to a request for findings of fact and conclusions of law after a hearing on a motion for new trial based on misconduct of the jury, bailiff, and judge, he filed findings of fact and conclusions of law affecting matters relating to the merits of the case which was tried before a jury.

(12) The trial court erred in concluding as a matter of law that the appellant is guilty of unclean hands.

(13) The trial court erred in finding as a fact that appellant's conduct was calculated to improperly influence the actions of the court and of the attorneys in this case and was prejudicial to the proper administration of justice.

(14) The trial court erred in refusing to submit the following requested special issues:

"Do you find from a preponderance of the evidence that the judgment in the Forney divorce suit, cause no. 1,139, 855, dividing the community property of the parties was rendered as a result of fraud or wrongful act of William H. Forney, Sr., unmixed with any fault or negligence on the part of appellant?"

"Do you find from a preponderance of the evidence that prior to the execution of the property settlement contract William H. Forney, Sr. concealed from appellant the fact that oil and gas sands had been discovered on the Live Oak County oil and gas leases?"

Appellant consolidates her first six points of error, in arguing that the undisputed evidence shows that the mineral interests in Live Oak County were community property omitted from the settlement agreement and divorce decree, of which she is entitled to recover one-half interest. Her seventh and ninth points of error attack jury findings regarding the bill of review.

She contends that the Live Oak mineral interests were community property because they were earned by Forney, Sr. during the marriage She details a history of dealings between Forney, Sr. and McCombs, and asserts that these dealings lead to the conclusion that Forney, Sr. and McCombs were partners in the development of the Live Oak County leases, and not Viking and McCombs, as alleged by appellees. She points out that the .7% overriding royalty interest was assigned by McCombs' trustee to Forney, Sr. by instrument dated December 28, 1978, which by its terms was made effective as of August 16, 1978, prior to the date of divorce. Appellant further asserts that Forney, Sr. conveyed the 23.4375% working interest by gift to Viking for the benefit of his children by a former marriage. She argues that this gift of the community interest was excessive as a matter of law since Forney, Sr. testified that he had no assets at dissolution of the marriage, but was, in fact, indebted to Bill Forney, Inc. in the amount of $500,000.00, which he paid off by trans-

ferring the overriding royalty interest to the corporation.

Appellant urges that since the gift of the 23.4375% working interest to the corporation was of a value far in excess of the property remaining in the community estate, the presumption of fraud was raised, and Forney, Sr. assumed the burden of proving that the gift was fair. Because no evidence was introduced showing fairness, and no issue was submitted regarding fairness of the transfer, appellant concludes that it was established that the gift was made with fraudulent intent, and must therefore be set aside as to her one-half interest. She argues that because the .7% overriding interest was earned during marriage, but not conveyed to Forney, Sr. until after dissolution of the marriage, this community interest was not considered by the court before it granted the divorce. Therefore, once the interest was conveyed to Forney, Sr., she succeeded to ownership of one-half interest. Appellant concludes that a constructive trust should be established as to her interest in both the working and overriding royalty interests, to prevent unjust enrichment.

To recover on any of her theories, appellant must prove that the property in dispute was, in fact, community property. However, if the mineral interests were community property, appellant must either demonstrate that the interests were omitted properties not divided in the divorce action, and hence properly subject to partition, or that the award to Forney, Sr. in the divorce decree was the result of Forney, Sr.'s extrinsic fraud, unmixed with any negligence or fault on her part, such that a bill of review should be granted.

■ In order to succeed on a bill of review to set aside a divorce decree, appellant must prove: (1) that she had a meritorious claim or defense in the divorce action; (2) which she was prevented from asserting by Forney, Sr.'s extrinsic fraud; and (3) that neither she nor her attorneys were negligent or at fault in not presenting her claim or defense.

**498**

■ Appellant has not made the required proof in support of her bill of review. The jury's finding with regard to special issue eight, that appellant's failure to assert her claim to the Live Oak County leases was not unmixed with any negligence or fault on her part or on the part of her attorneys, which itself caused her to fail to present her claim for a community interest in the Live Oak properties, is alone fatal to her bill of review.

■ Appellant bore the burden of persuasion on the issue of whether she had been negligent or at fault in failing to present her claim or defense in the divorce action. While appellant urges, in her ninth point of error, that the jury's answer is so against the great weight and preponderance of the evidence as to be clearly wrong, there was considerable evidence in the record supporting the jury's finding. In any event, it does not avail appellant to complain of the factual insufficiency of the jury's negative answer to a special issue on which she had the burden of proof. The jury's failure to find affirmatively on a special issue merely means that appellant failed to meet her burden, and evidence is not required to support the negative answer. See *Beam v. Voss*, 568 S.W.2d 413 (Tex.Civ.App.—San Antonio 1978, no writ), and cases cited therein.

While appellant urges that the jury's written requests for further instruction with regard to special issue eight indicate that it did not, in fact, find appellant negligent, this contention is also without merit. It was disputed whether or not the jurors mistook the meaning of the question. Furthermore, the verdict was complete on its face, was signed by the foreman, and contained no conflicts. The verdict was accepted and the jury discharged. Jurors may not set aside verdicts by proof, presented after they have been discharged, that their uncoerced affirmation was contrary to their true conviction. See *Van Wart v. Van Wart*, 501 S.W.2d 359 (Tex. Civ.App.—Austin 1973, no writ).

■ Appellant also failed to prove that she was prevented from asserting her claim or defense due to extrinsic fraud perpetrated by Forney, Sr. In her pleadings appellant alleged both that Forney, Sr. had failed to reveal the Live Oak County strike and its value in the inventory of properties filed in the divorce action, and that Forney, Sr., acting in concert with McCombs' trustee and Forney, Sr.'s "puppet" corporations, concealed community assets from her so that she was prevented from asserting her right to them in the divorce action. She further alleged that she was coerced into signing the settlement agreement, and did so only under duress. Both of these contentions were submitted in special issues to the jury, which found adversely to appellant.

■ Extrinsic fraud is generally defined as a wrongful act committed by the other party to the suit, which prevented the losing party from either knowing about his rights or defenses, or from having a fair opportunity of presenting them at trial. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996 (1950). This general rule, that only extrinsic fraud will justify setting aside a judgment, is based on the principle that judgments are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for new trial, or to reopen the judgment, or by appeal. The fraud which would otherwise relieve a party from the binding effect of a judgment must be related to some matter other than the issue in controversy in the action. *Id.* at 1002.

In circumstances such as those detailed in the case at bar, courts have held the alleged fraud to amount to intrinsic fraud at best. For example, in *Rylee v. McMorrough*, 616 S.W.2d 649 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ dism'd), the wife asserted that the husband had misrepresented the character and value of certain property, threatened her physical health, and coerced her into signing a property settlement agreement; the fraud alleged was held to be intrinsic. Similarly, in *Kuper v. Kuper*, 336 S.W.2d 819 (Tex.Civ.App. —Amarillo 1960, writ dism'd), the wife

sought a bill of review on the ground that the husband had defrauded her concerning the value of stocks. The court held that the fraud alleged was intrinsic. In reaching its conclusion, the court emphasized the fact that the wife and her attorneys had made an investigation into the value of the property. The wife was not prevented from fully informing herself as to the true value of the stocks in question.

■ The pre-trial motions, and pleadings and evidence introduced at trial on the bill of review, together with a close reading of the PSA and Release, lead to the inescapable conclusion that any fraud perpetrated in this case was at best intrinsic. The Live Oak County leases were at issue in the original divorce action.

■ This conclusion is in accord with the policy considerations announced by the courts in restricting the availability of bills of review in divorce cases. There must be finality of judgments, and judgments will be disturbed only in the most egregious circumstances. The proof required to establish a right to a bill of review in a divorce case will therefore not be relaxed even in cases where an injustice results. *Biggs v. Biggs*, 553 S.W.2d 207 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ dism'd).

It is clear, therefore, that appellant's bill of review was properly denied. It is also clear that appellant's claim for partition was properly denied, and that summary judgment was properly rendered in favor of Forney, Sr. on the basis of *res judicata.*

■ The doctrine of *res judicata* bars relitigation of matters actually litigated in a prior cause of action, as well as causes of action or defenses arising out of the same subject matter which might have been litigated in the prior suit. *Texas Water Rights Commission v. Crow Iron Works*, 582 S.W.2d 768 (Tex.1979). *Res judicata* has been applied in partition suits alleging omitted properties. See, e.g., *Bray v. Bray*, 576 S.W.2d 664 (Tex.Civ.App.—Beaumont 1978, no writ). The pleadings, discovery motions, and post-trial motions may be looked to in determining whether a property was omitted or considered during a prior divorce proceeding. *Id.*

■ Appellant urged in her cross-action in the divorce case that Viking and/or Bill Forney, Inc. held valuable producing and non-producing oil and gas leases to which she was entitled a one-half community interest. Her requests for production during discovery support the conclusion that appellant asserted an interest in any and all mineral leases held by Viking, including the Live Oak County leases. Furthermore, the settlement agreement involved in the instant case awarded Forney, Sr. "any and all working interests, undivided interests, and all oil and gas properties." It also awarded him all property not specifically enumerated and allocated in the agreement. Because the record indicates that the properties allegedly omitted were claimed by appellant in the course of the divorce proceeding, even though the decree did not specifically mention the allegedly omitted property, it will be considered to have been conclusively settled by the final decree in the divorce suit. See, e.g., *Bloom v. Bloom*, 604 S.W.2d 393 (Tex.Civ.App.— Tyler 1980, no writ). See, by contrast, *Yeo v. Yeo*, 581 S.W.2d 734 (Tex.Civ.App.—San Antonio 1979, writ ref'd n.r.e.); *Vibrock v. Vibrock*, 549 S.W.2d 775 (Tex.Civ.App.— Fort Worth 1977, writ ref'd n.r.e.).

■ Having failed to prove a right to either a bill of review or to partition, appellant is barred as a matter of law from collaterally attacking the divorce judgment on the theories of unjust enrichment and constructive trust. Tex.R.Civ.P. 329b(f); *McRae v. Turner*, 626 S.W.2d 351 (Tex. App.—Fort Worth 1981, no writ); *Sutherland v. Sutherland*, 560 S.W.2d 531 (Tex. Civ.App.—Texarkana 1978, writ ref'd n.r. e.).

Appellant's first through ninth, and fourteenth points of error are overruled.

Appellant's remaining points of error have been reviewed, and we find them to be without merit. Appellant's tenth, elev-

enth, twelfth, and thirteenth points of error are therefore overruled.

The judgment below is affirmed.