NUMBER 13-00-124-CV

 

COURT OF APPEALS

 

THIRTEENTH DISTRICT OF TEXAS

 

CORPUS CHRISTI

 



 

FREDDA SUE MOWBRAY,                                                                 Appellant,

 

v.

 

KRISTIN AVERY (FORMERLY KNOWN AS KRISTIN MOWBRAY)

AND VIRGINIA HALE,                                                                       Appellees.

 



 

On appeal from the 197th District Court

of Cameron County, Texas.

 



 

O P I N I O N

 

Before Justices Hinojosa, Castillo, and
Amidei[1]

Opinion by Justice Castillo

 








Appellant
Fredda Sue Mowbray appeals the judgment of the trial court, dismissing her petition
for the imposition of a constructive trust and for a bill of review of a
summary judgment in a prior suit entered over six years earlier.  In the prior proceeding, the trial court had
granted a summary judgment finding, after her criminal conviction for killing
her husband, William ABill@ Mowbray, that appellant was not
entitled to the proceeds insuring Bill Mowbray=s
life.  Appellant filed a petition for a
bill of review of that decision after she was acquitted in a subsequent
criminal trial after a writ of habeas corpus was granted that reversed her
original conviction and ordered a new trial.  
Appellant asks us to review whether the trial court erred in:  (1) sustaining special exceptions to her
second amended petition for bill of review; (2) considering appellees= late supplement to the motion for
summary judgment; (3) considering appellee=s
motion for summary judgment which was not supported by conclusive competent
summary judgment evidence; (4) granting summary judgment on the ground of
limitations; (5) granting summary judgment on the ground that there was no
extrinsic fraud that prevented her from presenting a defense; and (6) granting
summary judgment on the ground that she failed to exercise due diligence in
filing a petition for bill of review.  We
affirm the judgment of the trial court.  


                                                                 THE
PARTIES








Forty-three
years old at the time of his death, Jay William Mowbray, Jr. (ABill Mowbray@)
died of a gunshot wound to the right temple on September 16, 1987.  Fredda Sue Mowbray, his second wife, was
charged with, convicted of, and, after re-trial, acquitted of  murder. 
Kristin Mowbray Avery (AAvery@) is the daughter of the deceased.  Virginia Hale is the ex-wife of the deceased
and mother of Kristin Avery.[2]  Jeanne N. Mowbray is the mother of the
deceased. 

                                                       PROCEDURAL
HISTORY 

                                                        I.
THE CRIMINAL CASE

On
June 9, 1988, Fredda Sue Mowbray was convicted by a jury of the murder of Bill
Mowbray in cause number 87-CR-1135-A in the 107th District Court of Cameron
County, Texas.   Mowbray v.
State, 788 S.W.2d 658 (Tex. App. - Corpus Christi 1990, pet. ref=d.). 
On December 18, 1996, the court of criminal appeals granted her petition
for writ of habeas corpus, finding that the record supported the trial court=s findings that the State knew about,
but failed to disclose, the blood splatter expert's report which supported the
defense=s theory
and that such favorable evidence would have resulted in an acquittal, vacated
the murder conviction, and ordered a new trial. 
Ex Parte Mowbray, 943 S.W.2d 461, 466 (Tex. Crim. App.
1996).  After a new trial in 1997,
Mowbray was acquitted of the murder of her husband.

                                                 II.
THE INSURANCE POLICIES 








Central
to the underlying dispute between the parties are life insurance proceeds which
total $1,755,000  involving the following
policies in effect at the time of Bill Mowbray=s
death.[3]


                                A.  The Pilot Life Policy and the Transamerica
Life Policy

Pursuant
to an agreement incident to the divorce of Bill Mowbray and Hale, proceeds from
Pilot Life Insurance Policy number 824540 (or its substitute)  in the amount of $130,000.00 were payable to
Virginia Hale with Avery as the Athird
party beneficiary.@[4]   Before the decree was entered, on November
14, 1974, Bill Mowbray acquired Transamerica Life Insurance Policy number
5381535 in the amount of $130,000.00, which named Virginia Mowbray as the
beneficiary of the policy.  On or about
July 30, 1986, Bill Mowbray attempted to change the beneficiary on the Transamerica
Life Insurance Policy to Fredda Sue Mowbray. 


                                                      B.  The West Coast Life Policy








On
November 18, 1982, Bill Mowbray purchased West Coast Life Policy number 654276
in the face amount of one million dollars. 
In the beneficiary provision, he listed the Small Business Administration
(ASBA@)
and the Brownsville National Bank of Commerce to the extent of Aloan balances.@  He added Avery, identifying an amount of A$130,000.00" and Fredda Sue
Mowbray Ato
receive the remaining balance of the policy proceeds.@  Later, Avery was listed as the first and
primary beneficiary.   Avery=s subsequent lawsuit alleged that Bill
Mowbray attempted to change the beneficiary of this policy to Fredda Sue
Mowbray, subject to the interests of the SBA, a lender.  The lawsuit alleged that Fredda Sue Anever signed nor authorized her husband
to sign her name to the change of beneficiary form;@
rather, Bill Mowbray Aforged
her signature on the said change of beneficiary form, and she was not told of
his actions and had no knowledge whatsoever of any such attempt to change the
beneficiary.@[5]  Part of the proceeds of the policy were paid
to the SBA and Mbank-Brownsville with the balance of the proceeds unpaid.

                                            C.  The Transamerica Policy No. 5878392  

Jeanne
Mowbray received the $50,000.00 proceeds of this policy.    

                                                        D.  The Gulf Atlantic Policy 

The
proceeds of policy number 195651 in the amount of $25,000.00 and number 196538
in the amount of $250,000.00 were paid to the SBA or to Mbank-Brownsville.  

                             III. THE FIRST
LAWSUIT:  KRISTIN AVERY ET AL V. 

                                                FREDDA
SUE MOWBRAY ET AL

 

                                                                      A.
History

 








In
1987, appellees Kristin Avery and Virginia Hale, individually and as trustee,
filed a lawsuit in the 107th District Court of Cameron County against appellant
Fredda Sue Mowbray.  The other defendants
in the lawsuit were Transamerica Occidental Life Insurance Company, Gulf
Atlantic Life Insurance Company, West Coast Life Insurance Company, R. Scott
Mowbray, administrator with the will annexed under the estate of J. William
Mowbray, Jr.,[6]
and Jeanne E. Mowbray Aas
an involuntary plaintiff.@[7]  At the time the lawsuit was filed, Avery was
the seventeen-year-old survivor of Bill Mowbray.[8]         

The
lawsuit, filed under cause number 11-97-5123-A, alleged that appellant had
fatally shot her husband, Bill Mowbray, and argued that she should not receive
the proceeds of his life insurance policies which designated her the
beneficiary.  The lawsuit was transferred
to the 197th District Court in Cameron County, assigned the cause number
91-05-2140-C, and was ordered continued until after the disposition of
Fredda  Mowbray=s
criminal case.  Appellant was convicted
of the murder of Bill Mowbray.  On May 7,
1991, the trial court entered a final summary judgment against appellant,
ordering that the life insurance proceeds be paid to appellees.  Appellee Avery did not receive all the
insurance proceeds; rather, the money was put in the registry of the court and
at various times amounts have been released by agreement of the parties.

                                                                   B.  Allegations








In
the lawsuit, Avery and Hale alleged that the insurance companies were
withholding the remaining insurance proceeds because of Acontroversy
concerning the  cause of death.@ 
As to the Transamerica policy, Avery and Hale alleged that Avery had a
vested equitable interest by virtue of the separation agreement and divorce
decree.  As to the West Coast policy,
they alleged that because Bill Mowbray had forged Fredda Sue Mowbray=s signature on the change of
beneficiary form Avery remained entitled to $130,000.00 Aperforce
of the prior (effective) beneficiary designation, regardless of the
circumstances under which Bill Mowbray died.@  They further alleged that Fredda Sue Mowbray
forfeited all interest in the proceeds under all policies by Awillfully bringing about the death of
the insured.@  Because Fredda Sue Mowbray was convicted of
murder, Avery and Hale alleged that Athis
Court should take judicial notice and she is barred and collaterally estopped
from claiming that his death was the result of anything other than intentional
homicide.@  

Avery
sought five million dollars in damages from Fredda Sue Mowbray for the wrongful
and untimely death of her father and exemplary damages in the same amount.   From the administrator, Avery sought a
constructive trust to hold all assets of the estate.  The lawsuit requested that the trial court Adeclare the rights, status and legal
relationship between the parties with respect to the insurance policies and
estate . . . in such a manner as will terminate the controversy.@ 
The lawsuit also sought attorney=s
fees. 

                                                                              








                                                        C.  The Summary Judgment








On
March 27, 1991, Avery and Hale filed a document containing four different
motions: a motion for partial summary judgment; a motion for reasonable
expenses; a motion for costs and attorney=s
fees; and a motion to sever.[9]  The motion for partial summary judgment
sought judgment as a matter of law upon three grounds.  The first ground sought judgment as a matter
of law on the first, third and seventh count of the second amended petition[10]
because appellant had forfeited her rights under insurance code article  21.23.[11]  The second ground claimed contractual rights
of plaintiff, Virgina Hale,  to the
proceeds of Transamerica policy number 5381525 (the subject of count 1 of the
petition) based on the agreement incident to her divorce from Bill
Mowbray.  The final ground of the summary
judgment noted that the $130,000 of the proceeds of the West Coast Life
Insurance Company policy number 654276 were already awarded to plaintiffs in
the second motion for summary judgment in the same case but asked the court to
formally enter judgment of the same as no interlocutory judgment had yet been
entered.  In the prayer to the summary
judgment motion, appellees asked the court to: 1) find that, because Fredda Sue
Mowbray had been shown to have murdered her husband, she had forfeited her
interests as beneficiary; 2) name Kristen V. Mowbray as the next of kin  of the insured; and 3) order that the proceeds
be entrusted to Virginia Hale as Trustee. 
Appellees also requested that the court enter such further declarations
as might be just and right, terminating the controversy between the parties as
to the life insurance policies in issue.

In
her response to the motion, Fredda Sue Mowbray asserted that she was innocent
of the murder of Bill Mowbray, that the court was not bound by the conviction
in the criminal case, and that a trial should be held to determine to whom  the insurance proceeds should be paid.   She urged that it would be incongruous for
the court to grant summary judgment on the insurance matters and allow the
wrongful death cause of action to proceed on Aprecisely
the same issues.@  She argued that her summary judgment evidence
did Astate affirmatively
that she did not bring about the death of the insured which creates a genuine
issue of material fact.@  








After
a hearing on April 17, 1991,
the trial court denied the motion for reasonable expenses and the motion for
costs and attorney=s
fees.  After a hearing on April 23, 1991, the 197th district
court granted summary judgment in favor of Avery and Hale as to the first,
second, and third counts of their petition, as amended.[12]  The trial court also granted the motion
severing Athese
counts respecting insurance proceeds@
Afrom the balance of the case@ and ordering that Afinal judgment with respect to such
insurance proceeds should be entered in favor of Avery and Hale.@[13]


Dated
May 7, 1991, the final
summary judgment provided, 

IT
IS ORDERED, DECREED and DECLARED:   

1.  That because she is shown to have committed
the Felony First Degree Murder of her husband, the insured [Bill Mowbray], by
shooting him with a handgun, Fredda Sue Mowbray (also known as Freda S.
Mowbray) forfeited her interests as beneficiary under all life insurance
policies or contracts insuring the life of the insured under Tex. Ins. Code
Ann. art. 21.23.

2.  That Kristin V. Mowbray, the only child of
the insured . . . is the next of kin (Anearest
relative@) of the
insured and, as such, is entitled to all of the rights, titles, benefits and
interests in and to all life insurance policies or contracts, insuring the life
of [Bill Mowbray] in which Fredda Sue Mowbray was named beneficiary (and no
other person was named as contingent beneficiary) specifically including,
without limitation, all proceeds of Transamerica Occidental Life Insurance
Company life insurance Policies numbers 5381535, 5381046, 5390108 and 5879790,
as well as West Coast Life Insurance Company life insurance Policy number
654276 at issue here.[14]









3.  That under an agreement of trust dated
October 21, 1987, styled AKRISTIN
VIRGINIA MOWBRAY FIRST TRUST AGREEMENT,@
all of the rights, titles, benefits and interests in and to any and all such
policies and contracts, including all proceeds thereof, with interest,
presently held in the Registry of the Clerk of the Court are entrusted to
Virginia Hale as Trustee for Kristin V. Mowbray, and should be paid over and
delivered to her in that capacity in accordance with the terms and provisions
of such TRUST AGREEMENT, subject to any fees incurred by the Clerk of Court in
handling such deposited funds.            

4.  That such rights, titles, interests and
ownerships as are recited in the three preceding declarations apply with equal
force to all funds heretofore disbursed and distributed pursuant to earlier
agreements or motions of the parties, specifically those ordered disbursed
under prior Orders of this Court signed on January 13, 1989, May 22, 1989, May
12, 1989, and August 6, 1990.[15]

On
June 5, 1991, Fredda Sue
Mowbray filed a Motion for New Trial seeking to set aside the final summary
judgment, urging that Afact
questions remain as to whether [she] brought about the death of Bill Mowbray.@[16]  No appeal was filed in this action.

THE
SECOND LAWSUIT - THE PETITION FOR  BILL
OF REVIEW: FREDDA SUE MOWBRAY v.  KRISTIN
(MOWBRAY) AVERY, ET AL. 

On
June 14, 1999, Mowbray
filed her original petition for bill of review in cause number 99-06-2653-C,
suing Kristin Avery and Virginia Hale, individually and as trustee for
Kristin  Mowbray, as plaintiffs in the
prior cause number 91-05-2140-C in which the court entered judgment in 1991. 

                                         A.  The original petition and special exceptions








In
her bill of review petition, Mowbray alleged that she was prevented from
asserting the meritorious defense of acquittal and innocence to the claims
against her in the underlying civil case, cause number 91-05-2140-C, due to the
wrongful and unconstitutional conduct of state officials, including the
intentional refusal to timely disclose material exculpatory information and the
use of manufactured expert test and analysis results.   She also alleged she had a meritorious
defense  in that, following her
conviction, she received a new trial whereupon she was acquitted of the murder
of Bill Mowbray.  She urged she Acould not have exercised any level of
care in her defense which would have overcome the intentional constitutional
violations by the official state actors and their conspirators which caused her
conviction and which sealed her fate in cause number 91-05-2140-C@ in which the court entered summary
judgment.  As relief, Mowbray prayed for
a new trial and that judgment in cause number 91-05-2140-C be set aside and
vacated.  

As
part of their separate original answers, appellees filed special exceptions
complaining of paragraph 9 of Mowbray=s
original petition, which provided:








9.  Mrs. 
Mowbray was prevented from asserting the meritorious defense of
acquittal and innocence to the claims against her in Cause No. 91-05-2140-C due
to the unconstitutional conduct of the state officials in her criminal trial
including the intentional refusal to timely disclose material exculpatory information
and the use of manufactured expert test and analysis results.  As a result, Mrs. Mowbray was precluded until
her acquittal at re-trial in 1997 from asserting the defense of acquittal and
from asserting the defense of actual innocence in a meaningful manner until her
1997 acquittal.  Mrs. Mowbray could not
have exercised any level of care in her defense which would have overcome the
intentional constitutional violations by the official state actors and their conspirators
which caused her conviction and which sealed her fate on summary judgment in
Cause No. 91-05-2140-C in which this Court entered judgment.  Mrs. Mowbray has no adequate remedy on appeal
of the judgment entered by this court. 
Due to the late discovery and determination of the extent of the
wrongful conduct which caused judgment to be entered by this Court against her
in the above referenced matter, all deadlines for perfecting appeal have
passed.    

The
special exceptions included as part of appellees=
separate original answers to Mowbray=s
petition urged that paragraph 9 in the petition failed to state facts: (1)
showing that she had a meritorious defense to appellees=
claims for relief in the underlying suit; (2) showing appellees= fraud or wrongdoing obstructed Mowbray
in presenting any defense to the underlying claims; (3) showing that, as a
result of extrinsic fraud, Mowbray was unable to present any alleged defense to
the claims in the underlying case; (4) showing that Mowbray was unable to
present evidence or facts supporting her defenses to the alleged claims in the
underlying suit; and (5) showing that Mowbray lacked an adequate remedy at law
to remedy the alleged injustice.  

On
October 11, 1999, the
trial court entered an Order Sustaining Special Exceptions, allowing Mowbray thirty
days to replead.  

             B. 
The first amended petition, special exceptions, and summary judgment
motion

On
November 10, 1999, Mowbray
filed her First Amended Petition for Bill of Review, alleging in relevant part
as follows:[17]








9.  Mrs. Mowbray was prevented from asserting the
meritorious defense of acquittal and innocence to the claims against her in
Cause No. 91-05-2140-C due to the unconstitutional conduct and extrinsic
fraud of the officers of the court in her criminal trial including the
intentional refusal to timely disclose material exculpatory information and the
use of manufactured expert testimony. 
As a result, Mrs. Mowbray was precluded until her acquittal at re-trial
in 1997 from asserting the defense of acquittal and from asserting the defense
of actual innocence in a meaningful manner. 
Mrs. Mowbray was unable to present evidence or facts supporting
her defenses to the claims in the underlying suit because of the
unconstitutional and extrinsic fraud of the officers of the court.  Mrs. Mowbray could not have exercised any
level of care in her defense which would have overcome the intentional
constitutional violations by the officers of the court and their
conspirators which caused her conviction and which sealed her fate on summary
judgment in Cause No. 91-05-2140-C in which this Court entered judgment.  Mrs. Mowbray has no adequate remedy on appeal
of the judgment entered by this court.  There
is no adequate remedy of law to remedy the injustice.  Due to the late discovery and determination
of the extent of the wrongful conduct which caused judgment to be entered by
this Court against her in the above referenced matter, all deadlines for
perfecting appeal have passed.   

Avery
and Hale again specially excepted to this amended petition, claiming that the
amendments did not cure the prior defects. 
On the same day, Avery and Hale filed their Motion for Summary Judgment,
and on December 2, 1999,
they filed an Amended Motion for Summary Judgment.[18]  The trial court set a hearing on appellees= special exceptions for January 5, 2000 and set a submission
date for summary judgment as January
 20, 2000, providing:








The
decision on this Motion for Summary Judgment will be made by the Court on the
basis of the Motion, reply(s) to motions, admissions, affidavits,
counter-affidavit, pleadings, depositions, interrogatories and answers to
interrogatories timely filed prior to the hearing.  

                           C.  The second amended original petition and
special exceptions

On
January 4, 2000, Mowbray
filed her Second Amended Petition adding a section for AUnjust
Enrichment/Constructive Trust.@[19]   She alleged that as a result of her
conviction, AAvery was
awarded and received approximately $1 million in insurance proceeds which were
originally designated for Plaintiff and real and/or personal property which
should have been rightfully inherited by Plaintiff.@  She added that her acquittal Adefeats the necessary condition that
Plaintiff was the >principal
or an accomplice in willfully bringing about the death of the insured= as required by the Insurance Code for
forfeiture of insurance proceeds.@   She further alleged:

14.  If not for the wrongful conduct of the law
enforcement officials, including officers of the court, Plaintiff would have
received the insurance proceeds and real and personal property as detailed
above.  A constructive trust is imposed
if a person holding the title to property would be unjustly enriched if he were
allowed to retain it.

15.  Defendant Avery is
therefore a third party beneficiary of the wrongful conduct by the law
enforcement officials.  The property
received as a result of that wrongful conduct therefore is held in a
constructive trust for the benefit of the rightful owner, Plaintiff
Mowbray.  Courts may impose a
constructive trust on a totally innocent beneficiary of wrongful acts.








On
that same day, Avery and Hale filed their Special Exceptions to Plaintiff=s Second Amended Original Petition
asserting that unjust enrichment and constructive trust are not independent,
alternative causes of action to a bill of review and that as a matter of law,
appellant could not assert either claim without alleging  valid grounds for a bill or review.  They also argued that as a matter of law,
obtaining property under a judgment could not be unjust enrichment.

                                           D.  Mowbray=s
summary judgment response

On
January 13, 2000, Mowbray filed her Supplemental Response to Defendants= Special Exceptions and Opposition to
Defendants= Amended
Motion for Summary Judgment urging that Avery and Hale had presented no
conclusive summary judgment evidence since it was not presented in a manner in
which the evidence would be admissible at trial,[20]
the statute of limitations did not bar the petition since the action was filed
well within four years after Mowbray=s
conviction was overturned,  and she had
shown extrinsic fraud which denied her the opportunity to fully litigate all of
the defenses she was entitled to assert in the underlying case.  She added that she met all of the elements of
a cause of action for fraud and official mistake from a collateral source which
is not mixed with any fault or negligence of her own.   She also urged that she properly pled a
cause of action for constructive trust.  


                 E.  Appellees=
Supplement to their Amended Motion for Summary Judgment








On
January 13, 2000, appellees
filed a Supplement to the Amended Motion for Summary Judgment, addressing
Mowbray=s
additional claims of unjust enrichment and constructive trust.  Included in the supplement was a request for
leave to supplement their previously filed amended motion with additional
grounds and exhibits, since Mowbray had added the claims less than twenty days
before the summary judgment hearing. 
They urged that (1) constructive trust/unjust enrichment are not
independent claims; and,  (2) the new
allegations were barred by limitations. 
On January 19, 2000,
appellees filed objections to Mowbray=s
summary judgment evidence and, in response to her objections,  requested that the trial court take judicial
notice of its own records contained in their motion for summary judgment.  Appellees also re-urged that a district
attorney was not a Acourt
official@ for the
purposes of a bill of review[21]
and  revisited their limitations
argument.  

On
January 20, 2000, Mowbray
filed objections to the supplemental motion that Avery and Hale had filed,
urging that it was filed late, but did not allege any prejudice or make any
request for a continuance. 

F.  Order Sustaining Defendants= Special Exceptions and Granting Motion
for Summary Judgment 

On
February 2, 2000, the trial
court signed the order from which Mowbray appeals.[22]









                                                                    ANALYSIS

                                                             I.
Special Exceptions

In
her first issue, Appellant challenges the trial court=s
decision to grant appellees=
special exceptions to her second amended petition.  She also complains of the trial court=s action in dismissing the cause
without allowing her any opportunity to amend her petition relative to claims
raised apart from the bill of review, namely the claim for a constructive trust
based on unjust enrichment.[23]  Appellees counter that appellant did not
state a claim for a bill of review because she did not allege facts: 1) showing
extrinsic fraud or mistake by appellees; 2) showing mistake or extrinsic fraud
of an officer of the court; or 3) demonstrating how such acts or omissions
prevented her from presenting her defense in the original suit.  Appellants also argue that unjust enrichment
and constructive trust are not independent causes of action and so could not
stand apart from the bill of review claim.

                                                            A.
Standard of Review








Although
special exceptions are generally filed to force clarification of vague pleadings,
they may also be used to determine whether the plaintiff has stated a cause of
action permitted by law.  Tex. R. Civ. P. 91; San Benito Bank
& Trust Co. v. Travels, 31 S.W.3d 312, 317 (Tex. App. B Corpus Christi 2000, no pet.). A
defendant may thus challenge the sufficiency of plaintiff=s pleadings to state a cause of action
by specifically pointing out the defect or reason that the claim is invalid.  Ortega v. Trevino, 938 S.W.2d 219, 220
(Tex. App. B Corpus
Christi 1997), rev=d
on other grounds, 969 S.W.2d 950 (Tex.
1998).








If
a pleading does not state a cause of action, the trial court does not err in
dismissing the whole case.  Holt v.
Reproductive Servs., Inc., 946 S.W.2d 602, 605 (Tex. App. B Corpus Christi 1997, writ
denied).  However, if the trial court
sustains the special exceptions for failure to state a cause of action, it must
allow the pleader an opportunity to amend.  Friesenhahn v. Ryan, 960 S.W.2d 656, 658 (Tex.
1998)(citing Texas Dep=t of Corr. v. Herring, 513 S.W.2d 6,10
(Tex. 1974)).  The party may then either (1) amend the
pleadings to cure the defect, or 2) stand on the pleadings and test the trial
court=s
decision on appeal.  Moseley v.
Hernandez, 797 S.W.2d 240, 242 (Tex. App. B
Corpus Christi 1990, no writ)(citing Hubler v. City of Corpus Christi,
564 S.W.2d 816, 820 (Tex. Civ. App. B
Corpus Christi 1978, writ ref=d
n.r.e.)).  If the pleader refuses to
amend, or the amended pleading fails to state a cause of action, the trial
court may dismiss the case.[24]
 Holt, 946 S.W.2d at 604.  But the trial court may not dismiss a case on
special exceptions for failure to state a cause of action if it has not
provided the pleader an opportunity to amend his pleading. Herring, 513
S.W.2d at 10; Mestiza v. De Leon,
8 S.W.3d 770, 774 (Tex. App. B
Corpus Christi 1999, no pet.).  The
protective features of the special exception procedure provide each pleader
with this right.  Herring, 513
S.W.2d at 9-10.








Yet
this right to amend only exists if the defect is curable.  Barto Watson, Inc. v. City of Houston, 998
S.W.2d 637, 641 (Tex. App. B
Houston [1st  Dist.] 1999, pet.
denied).  The trial court need not give
the plaintiff an opportunity to amend if the pleading defect is the type which
amendment cannot cure.  Sepulveda v.
Krishnan, 839 S.W.2d 132, 134 (Tex. App. B
Corpus Christi 1992), aff=d,
916 S.W.2d 478 (Tex. 1995).  Additionally, the right to amend does not
extend to the privilege of multiple opportunities to amend in the face of
repeated grants of special exceptions. If there is no reasonable probability
that further amendment would disclose facts legally sufficient to sustain a
cause of action, the trial court may properly refuse further leave to amend.  City of Fort Worth v. Gilliland, 169
S.W.2d 149, 151 (Tex. 1943); Sparkman
v. Peoples Nat=l
Bank, 553 S.W.2d 680, 682 (Tex. App. B
Waco 1977, writ ref=d
n.r.e.).  Likewise, once a trial court
has sustained special exceptions, if the remainder of a pleading does not state
a cause of action, the trial court does not err in rendering a final judgment
of dismissal of the entire case.  Cole
v. Hall, 864 S.W.2d 563, 566 (Tex. App. B
Dallas 1993, writ dism=d
w.o.j.); Hubler, 564 S.W.2d at 820.

Review
of a trial court=s
dismissal of a cause based on the grant of special exceptions requires
examination of two distinct rulings: 1) the decision to sustain the special
exceptions; and 2) the decision to dismiss the cause of action. Cole,
864 S.W.2d at 566.  If the decision to
sustain the special exceptions was proper, we then review whether the decision
to dismiss was appropriate.  Id.  An appellant must specifically challenge both
rulings, Holt, 946 S.W.2d at 604, or face waiver of the
respective issue not challenged. Cole, 864 S.W.2d at 566-67.  In the present case, although appellant did
not raise a specific issue complaining of the trial court=s action in dismissing her action based
on the grant of special exceptions, we find that the complaint was sufficiently
raised in her issue challenging the grant of the special exceptions. See
Meyer v. Shelly, 34 S.W.3d 619, 622 n.3 (Tex. App. B Amarillo 2000, no pet.)(regardless of
label attached to point of error, tenor of brief indicated that appellants were
attacking both the decision to sustain the special exceptions and the decision
to dismiss the suit).








We
review a trial court=s
order sustaining special exceptions for abuse of discretion.  Holt, 946 S.W.2d at 602.  The test for abuse of discretion is whether
the court acted without reference to any guiding rules and principles or
whether the act was arbitrary and unreasonable.  Downer v. Aquamarine Operators, Inc., 701
S.W.2d 238, 241‑42 (Tex.
1985); Pedraza v. Crossroads Sec. Sys., 960 S.W.2d 339, 342 (Tex. App. -
Corpus Christi 1997, no pet.).  A trial
court has broad discretion in ruling on special exceptions.  Burgess v. El
 Paso Cancer Treatment Ctr., 881 S.W.2d 552,
554 (Tex. App. - El Paso 1994, writ denied). 


However,
the issue of whether a petition states a claim is a question of law. Meyer,
34 S.W.3d at 622.  Accordingly, when
determining whether a trial court has erred in determining that a petition
failed to state a cause of action, the reviewing court must consider the issue de
novo, @taking
all allegations, facts, and inferences in the pleadings as true and viewing
them in a light most favorable to the pleader.@
Travels, 31 S.W.3d 312, 317 (Tex.
App. B Corpus
Christi 2000, no pet.). 

Keeping
the foregoing rules of law in mind then, we consider each of the special
exceptions leveled at the plaintiff=s
petition in inverse order.

                                             B.
Unjust Enrichment/Constructive Trust

Appellant
argues that the trial court improperly sustained special exceptions  as to her unjust enrichment and constructive
trust claims.  She also complains that
the trial court should not have dismissed these causes of action without
allowing her an opportunity to amend. 
However, her Second Amended petition does not attempt to raise
constructive trust and unjust enrichment as two separate causes of action.
Instead it simply asks the trial court to impose a constructive trust and notes
that A[a]
constructive trust is imposed if a person holding the title to property would
be unjustly enriched if he were allowed to retain it.@
Aside from the caption of the paragraph, this is the only reference to unjust
enrichment.  We do not read this as
raising a cause of action for unjust enrichment. 








Moreover,
unjust enrichment is not a distinct independent cause of action but simply a
theory of recovery.  Amoco Prod. Co.
v. Smith, 946 S.W.2d 162, 164 (Tex. App. B
El Paso 1997, no writ); Oxford Fin. Co., Inc. v. Velez, 807 S.W.2d 460,
465 (Tex. App. B Austin
1991, writ denied); City of Corpus Christi v. Heldenfels Brothers, Inc.,
802 S.W.2d 35, 40 (Tex. App. B
Corpus Christi 1990), aff=d,
832 S.W.2d 39 (Tex. 1992).  It can be applied where there is a failure to
make restitution of benefits received under circumstances which give rise to an
implied or quasi-contractual obligation to repay, that is, where a benefit was
wrongfully secured or passively received which would be unconscionable for the
receiving party to retain. Oxford,
807 S.W.2d at 465; Heldenfels, 802 S.W.2d at 40.  The unjust enrichment doctrine applies the
principles of restitution to disputes where there is no actual contract,  Amoco, 946 S.W.2d at 164, and is based
on the equitable principle that one who receives benefits which would be unjust
for him to retain ought to make restitution. Bransom v. Standard Hardware,
874 S.W.2d 919, 927 (Tex. App. B
Fort Worth 1994, writ denied).








A
party may recover under an unjust enrichment theory where a person has obtained
a benefit from another due to fraud, duress or taking of undue advantage, Heldenfels
Brothers. Inc.v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex.
1992) , yet recovery under a theory of unjust enrichment is not dependent on
wrongdoing by the opposing party.  Oxford,
807 S.W.2d at 465 (citing Fun Time Ctrs., Inc. v. Cont. Nat=l Bank, 517 S.W.2d 877, 884 (Tex.
Civ. App. B Tyler
1974, writ ref=d
n.r.e.)). However, to recover under such theory, the profit must be actually
unjust under the principles of equity.  Zapata
Corp. v. Zapata Gulf Marine Corp., 986 S.W.2d 785, 788 (Tex. App. B Houston [1st Dist.] 1999, no pet.).  Unjust enrichment is not a proper remedy Amerely because it might appear
expedient or generally fair that some recompense be afforded for an unfortunate
loss to the claimant, or because the benefits to the person sought to be
charged amount to a windfall.@
 Heldenfels, 802 S.W.2d at 40. 

While
Aunjust enrichment@ is not per se a cause of action, an
action for restitution, or seeking the imposition of a constructive trust, may
lie on the legal theory of unjust enrichment.  HECI Exploration Co. v. Neel, 982 S.W.2d
881, 891 (Tex. 1998);[25]
Ginther v. Taub, 675 S.W.2d 724, 728 (Tex.
1984); Oxford, 807
S.W.2d at 465; Republic Bankers Life Ins. v. Wood, 792 S.W.2d 768, 779
(Tex. App. B Fort
Worth 1990, writ denied).  Appellant=s petition clearly seeks to bring an action
for the imposition of a constructive trust based on the legal theory of unjust
enrichment.













We
consider then that the true question before us is whether the trial court erred
in sustaining special exceptions on, and ultimately dismissing, appellant=s claim for a constructive trust based
on the theory of unjust enrichment, 
without allowing appellant an opportunity to amend her petition relative
to this claim.  There is no dispute that
appellant was afforded no opportunity to amend as to this particular
claim.  The grounds that were asserted in
the motion for special exceptions as to the constructive trust claim were that
under the facts pled, there were no grounds on which to impose a constructive
trust because: 1) as a matter of law the plaintiff could not assert unjust
enrichment or a constructive trust because the judgment had to be enforced
unless valid grounds were alleged for a bill of review;  and 2) as a matter of law obtaining property
under a judgment is not unjust enrichment and a judicial award is not fraud,
duress or undue advantage.[26]  These are claims which if true, would render
such alleged pleading defects not subject to being cured by amendment and hence
dismissal would be proper.  Sepulveda,
839 S.W.2d at 134.  Thus if the trial
court was correct in granting such exceptions, it did not err in dismissing as
to that claim without allowing an opportunity to amend.  Id.  However, if a claim for the imposition of a
constructive trust could be recognized by law under the facts and circumstances
of this particular case, then there would have been no basis for the granting
of special exceptions as to that claim since no attack was made on the
specificity of the claim or that any elements of a constructive trust were not
alleged.  Even if such exceptions had
been made, and sustained, the trial court could not have dismissed the claim
without allowing an opportunity to amend. 
Herring, 513 S.W.2d at 10.

Assuming,
for the sake of this discussion only, that the bill of review claim was
properly dismissed for failure to state a claim, we consider appellees= related arguments that a constructive
trust claim cannot be utilized to recover property awarded under a final judgment,
absent  grounds for the setting aside of
that judgment and that the receipt of proceeds awarded by way of a court
judgment cannot be an Aunjust
enrichment@ which
can give rise to a constructive trust. 
We review these issues de novo, taking all allegations, facts,
and inferences in the pleadings as true and viewing them in a light most
favorable to the pleader. Travels, 31 S.W.3d at 317. 








We
first note that while it is true that a constructive trust is an equitable
remedy, Estate of Graham, No. 13-00-334-CV, 2001 Tex. App. LEXIS 8481,
*29  n.1 (Tex. App. B Corpus Christi 2001, no pet. h.), it
would be overly simplistic to state that therefore a suit for a constructive
trust cannot lie as a distinct action. 
Our case law is replete with suits filed specifically either to impose
or enforce a constructive trust.  While
specific elements must certainly be shown in order for a plaintiff to be
entitled to a constructive trust,[27]
it would be an incomplete statement of the law to say that a constructive trust
is merely a remedy.  A
constructive trust is, rather, Aa
device equity uses to right a wrong,@
Lesikar v. Rappeport, 33 S.W.3d 282, 303 (Tex. App. B Texarkana 2000, pet. denied), Aan equitable tool in the court=s power that can infer a fiduciary-like
relationship within a transaction for the purpose of promoting justice.@ 
Harris v. Sentry Title Co., Inc., 715 F.2d. 941, 946 (5th Cir.
1983). 








There
is some support, however, for appellees=
contention that a constructive trust cannot be used to recover property ordered
under a final judgment.  Although not
stated in such terminology, appellees essentially argue that such an action
would be an impermissible collateral attack on the judgment.  In Forney v. Forney, the First
District Court of Appeals affirmed a partial summary judgment dismissing a
cause of action for a constructive trust because the appellant had failed to
prove her right to a bill of review which was also requested.  672 S.W.2d 490, 499 (Tex. App. B Houston [1st Dist.] 1983,
writ dism=d
w.o.j.).  In that case, the petitioner,
much like appellant in the present case, had filed a bill of review regarding a
prior divorce decree along with a claim for partition on properties alleged not
to have been disposed of in the divorce and also a claim seeking a constructive
trust of certain interests disposed of under the divorce decree based on the
theory of unjust enrichment.  Id.
at 493.  The Forney court held
that Ahaving
failed to prove a right to either a bill of review or to partition, appellant
is barred as a matter or law from collaterally attacking the divorce judgment
on the theories of unjust enrichment and constructive trust.@  Id.
at 499.  This same conclusion was reached
in similar cases by the Dallas
court of appeals.  See Curtis Sharp
Custom Homes v. Glover, 701 S.W.2d 24, 25-6 (Tex. App. B Dallas 1985, writ ref=d n.r.e.); McLemore v. Johnston,
585 S.W.2d 347, 348 (Tex. App. B
Dallas 1979, no writ) (constructive trust action was an attempted collateral
attack on valid divorce judgment which could only be set aside by bill of
review).

However,
in 1993, the Texas Supreme Court held that a suit to impose a constructive
trust invoked the equity powers of the court and was not a collateral attack on
a prior judgment.  State v. Durham,
860 S.W.2d 63, 67 (Tex.
1993).  The court cited approvingly
language holding that the remedy of constructive trust was Aauthorized as relief from extraneous
fraud and is not in conflict with the rule against collateral attack.@  Id.  (citing Dilbeck v. Blackwell, 126
S.W.2d 760, 761 (Tex. Civ. App. B
Texarkana 1939, writ ref=d)).
The court thus found that the State had alleged fraud extrinsic to the judgment
and its claim for a constructive trust was not a collateral attack on the prior
judgment.  Id.
 We note also that the Durham
case involved a suit to impose a constructive trust upon property which had
been part of a lease determined to be Avalid
and subsisting@ in the
prior judgment. Id.  








We
are aware that the decision in Durham
was in a case where there was a clear allegation of extrinsic fraud which was
not and could not have been adjudicated at the time of the original trial.  Id.  We need not decide whether the fraud alleged
in the present case is intrinsic or extrinsic or whether it could have been
adjudicated at the time of the original trial in order to dispose of this
issue.  There was no special exception
raised that the constructive trust claim could not stand because the fraud
alleged was intrinsic fraud, nor that it failed in specificity as to the
particular elements to be raised in a constructive trust action based on unjust
enrichment.  See Tex. R. Civ. P. 91 (special exceptions
should point out Awith
particularity@ the
defect, omission, obscurity, or other insufficiency).  Accordingly, we express no opinion on whether
the grounds as alleged in the second amended petition fulfilled these
requirements.  The sole complaints made
in the special exceptions as to constructive trust/unjust enrichment were that
a claim for a constructive trust could not be made against proceeds which were
determined by a prior court judgment because such receipt could not be unjust,
and that allowing such a claim would impermissibly allow a party to circumvent
the requirements for a bill of review. 
Having determined that the decision in Durham
permits such claims, at least under certain circumstances, we find that the
trial court erred in sustaining the special exceptions made as to that claim
and dismissing appellant=s
action for a constructive trust based on a theory of unjust enrichment.

C. Bill of Review

A
bill of review is an equitable action brought by a party to a prior action who
seeks to set aside a judgment that is no longer appealable or subject to a
motion for new trial.  State v. 1985
Chevrolet Pickup Truck, 778 S.W.2d 463, 464 (Tex.
1989).  Traditionally, in order to state
a claim for a bill of review, a petitioner must allege: 1) a meritorious
defense to the cause of action supporting the judgment; 2) which he was
prevented from making by the fraud, accident or wrongful act of the opposing
party; 3) unmixed with any fault or negligence of his own.  Alexander v. Hagedorn, 226 S.W.2d 996, 998
(Tex. 1950).[28]


Over
time, a body of case law has emerged which allows a petitioner who has been
denied the opportunity to present a defense to a prior suit, or file a motion
for new trial or appeal of the same, 
because of the reliance on the improper execution of








an official duty
by a court functionary, to raise such mistake as an alternative to proving the
second element of a bill of review.  McRoberts
v. Ryals, 863 S.W.2d 450, 455 (Tex.
1993) (Enoch, J., dissenting); Transworld Fin. Servs. Corp. v. Briscoe,
722 S.W.2d 407, 408 (Tex. 1987); Baker
v. Goldsmith, 582 S.W.2d 404, 407 (Tex.
1979).  This has sometimes been
characterized as the Aofficial
mistake@
doctrine.  Goldsmith, 582 S.W.2d
at 407.  It is completely distinct from
the Afraud,
accident or wrongful actA
doctrine, that is, the classic second element is not extended to cover Afraud, accident or wrongful actA of a court functionary.  Indeed, a historical review of the cases
recognizing the Aofficial
mistake@ doctrine
demonstrates that in such instances where specific acts of court officials were
directly ruled on, such doctrine has been narrowly imposed within the very
specific context of a failure by a court or its functionary in the discharge of
official duties which prevented the petitioner from exercising his right to
challenge a judgment by post-judgment actions or appeal or prevented the
petitioner from presenting his contentions in the former action rather than for
some general misconduct or wrongdoing of court functionaries.[29]
 Ryals, 863 S.W.2d at  453 (party deprived of right to appeal by
reliance on improper advice of appellate court clerk); Goldsmith, 582
S.W.2d at 407 (defendant denied right to present contentions when default
judgment entered due to misplacement of his answer by courthouse mail room
employee); Petro-Chemical Transport, Inc. v. Carroll, 514 S.W.2d 240,
244-45 (Tex. 1974)(defendant deprived of opportunity to file motion for new
trial due to failure of clerk to send notice of judgment).  Essentially, Aofficial
mistake@ in the
context of a bill of review refers to either erroneous information given by the
court or an official court functionary or a mistake or error of the same in the
discharge of required official duties.  Goldsmith,
582 S.W.2d at 407; McDaniel v. Hale, 893 S.W.2d 652, 663 n.22 (Tex. App.
B Amarillo 1994, writ denied).








In
the present case, appellant=s
second amended petition complains of the 
Aunconstitutional
conduct and extrinsic fraud@
of Aofficers of the court@ as the basis for her bill of review
action.[30]  Appellees specially excepted to this
petition, urging that appellants failed to state facts that showed: 1)
extrinsic fraud or mistake by the defendants; 2) extrinsic fraud or mistake of
an officer of the court;  and 3) that such
acts or omissions prevented appellant from presenting her defense to the
summary judgment in the underlying case. 
Appellant has conceded that there was no fraud, accident or wrongdoing
by the adversarial party.  Further, as
noted previously, there is no ground for a bill of review due to the Afraud@
of a court functionary or official, but only for any exception limited to an Aofficial mistake@
by way of some dereliction of official duty upon which a petitioner has relied,
which prevents the petitioner from presenting a defense or filing a challenge
to the judgment through normal procedures. 
Hence the question of whether the district attorney committed fraud, and
if so, whether it was extrinsic or intrinsic, is not before this Court as the
same is not a ground for a bill of review. 
We consider only whether: 1) a district attorney is a Acourt official@
in the context of a bill of review petition; 2) 
if he is, whether in the instant case, the actions alleged would
constitute an official mistake that could support a petition for bill of
review; and 3) if so, whether there are facts alleged in the petition that show
that these actions barred appellant from presenting a defense. 








We
first observe that, unlike the claim for a constructive trust, the trial court
did previously allow for amendment of the bill of review claim as a result of a
prior motion for special exception. 
However, the first motion for special exception only related to the
third question before us B
whether the petition alleged facts that a mistake by a court official prevented
appellant from raising a defense.  Thus,
if the plaintiff again failed to state a claim as to that issue, after having
an opportunity to amend, it would have been well within the trial court=s discretion to dismiss the claim
without allowing further opportunity to amend. Gilliland, 169 S.W.2d at
151.  However, the first two issues were
not raised in the first motion for special exceptions and hence the trial court
could not dismiss without allowing an opportunity to replead unless the defects
could not be cured by amendment.  Sepulveda,
839 S.W.2d at 134.  The first two defects
complained of B that the
district attorney cannot be an Aofficer
of the court@as such
term is used in the context of a bill of review and that the actions alleged to
have been committed by the district attorney are not the sort that constitute
an official mistake for bill of review purposes B
are both defects which amendment could not cure and hence the trial court would
have had the discretion to dismiss the cause of action if it sustained either
of these exceptions.  Id.  Of course, dismissal would only be proper if
the trial court did not err in sustaining the special exceptions to this claim
as stated in the second amended petition and it is that decision then that we
turn to.








The
first question propounded is whether district attorneys are Acourt officials@
for the purposes of a bill of review.  We
note that there has been some variation in the language of appellate courts in
reference to the Aofficial
mistake@
exception.  The terms Acourt or a functionary thereof,@[31]
Aofficial court functionary,A[32]  @official
of the court,@[33]  Acourt
personnel,@[34]
Acourt official,@[35] Acourt
officer,@[36] @officer
of the court,@[37] and Aofficers
of the court or official court functionaries@[38] have all been used.  Common to all of these descriptions when
examined in the context of the bill of review cases in which they appeared is
that the official was always under the direct supervision of the court that
rendered the judgment or charged with duties that were directly imposed by that
court (or by way of appropriate statutes or regulations) for the proper
administration of that court=s
functions and, in those matters, acting on the court=s
behalf, with three exceptions which we discuss infra.  See cases cited below and also Rodriguez
v. Holmstrom, 627 S.W.2d 198, 200 n.1 (Tex. App. B
Austin 1981, no writ)(holding that a justice of the peace was not an official court
functionary of the county court at law which issued the original judgment).








It
appears that the term Aofficer
of the court@ has been
freely interchanged with  the other
similar terms without any special reference to the fact that attorneys are
officers of the court, albeit not in the same manner as a person
generally considered a court functionary, official or personnel.  It is certain that Aofficer
of the court@ language
in the bill of review context was not meant to extend broadly to all attorneys
as the supreme court soundly rejected the notion that a petitioner could invoke
this language to complain of an action of her own attorney, stating directly
that  Aofficers
of the court@ in the
context of the bill of review Aofficial
mistake@ exception  to proof of extrinsic fraud did not
include the litigants=
attorneys.  Briscoe, 722 S.W.2d at
408. 








Indeed,
we have found only three cases where the definition of an Aofficer of the court@ for the purposes of a bill of review
was extended to attorneys.  The first two
involved attorneys for the adversarial party, which would have also fallen
under the normal requirements of the second prong of a bill of review, and
errors by the clerk of the court, relying on information which the attorneys
neglected to correct.[39]  The last, an unpublished opinion, summarily
assumes that the official mistake exception includes an attorney as an Aofficer of the court,@ and its decision appears to have
turned on the fact that the judgment in question came about through a failure
on the part of an attorney who acted without authority from the petitioner, an
action which the reviewing court noted to be sufficient in itself to set aside
the former judgment.[40]  We are not convinced by any of these
cases.  Given the narrowness with which
the courts have interpreted the Aofficial
mistake@
exception (and the requirements for bills of review in general,[41]) there is no persuasive authority
or justification for extending this exception to cover the actions of all attorneys
(including district attorneys) simply because they are generally Aofficers of the court@ especially as they do not directly act
for the court as do court Afunctionaries,@ Aofficials@ or Apersonnel.@    


Nor
is there a justification for finding that because  district attorneys are charged with
prosecuting cases in the courts of Texas,
they are therefore Acourt
officials@ as
appellant argues.[42]   District attorneys are not, by virtue of
their office, under the direct control of the courts to any greater extent than
any practicing attorney.  Indeed, their
jurisdiction to act in fulfillment of their official duties is constitutionally
protected from court interference.  State
ex. rel. Holmes v. Denson, 671 S.W.2d 896, 899-900 (Tex. Crim. App. 1984).








We
therefore find that district attorneys are not Acourt
officials@ for the
purposes of a bill of review. 
Accordingly, we find the trial court did not err in sustaining the
special exceptions as to the bill of review and dismissing this claim.  We 
overrule this issue.

                                                       II.
The Summary Judgment

Appellant=s remaining issues on appeal all relate
to actions of the trial court relative to the summary judgment.  The summary judgment order in the present
case did not specify upon which ground the trial court was granting summary
judgment and thus we will uphold the judgment if any of the grounds in the
summary judgment motion can be sustained. 
Bradley v. State ex rel. White, 990 S.W.2d 245, 247 (Tex.
1999); Weakly v. East, 900 S.W.2d 755, 758 (Tex. App.BCorpus Christi 1995, writ denied). 








In
her remaining five issues, appellant complains that the trial court: A)
improperly considered a late supplement to the motion for summary judgment; B)
improperly considered incompetent summary judgment evidence; C) wrongfully
granted the motion for summary judgment on the ground of limitations; D)  wrongfully granted the motion for summary
judgment on the ground of no extrinsic fraud; and E)  wrongfully granted the motion for summary
judgment on the ground of lack of due diligence.  As we have already determined that the trial
court properly dismissed the bill of review claim on special exceptions, we
need not decide the last two issues asserted, both of which specifically refer
to the propriety of the summary judgment on the bill of review claim.  We will address the remaining contentions in
turn. 

                                    A. The
Supplemental Motion for Summary Judgment

Appellant
first complains that the trial court improperly considered appellee=s supplemental motion for summary
judgment filed on January 12th, less than twenty-one days prior to the
submission date of January 20th, arguing that the supplemental motion was thus
untimely under Texas Rule of Civil Procedure 166a(c) and that it is error to
grant summary judgment on new grounds when a plaintiff has been deprived of the
notice and hearing requirements of that rule. 
While the latter contention is correct, 
Rule 166a(c) does allow parties to file motions within twenty-one days
before the summary judgment hearing upon notice to the opposing party and with
leave of court.  Tex. R. Civ. P. 166a(c).  It lies within the sound discretion of the
trial court whether to accept or to consider late filings pursuant to this
rule.  Daniell v. Citizens Bank, 754
S.W.2d 407, 409 (Tex. App. B
Corpus Christi 1988, no writ).  The
record reflects that, in conformity with the rule, appellees provided notice to
appellant and requested, and received, leave of court to file the supplemental
motion. 








Moreover,
review of the record reveals that the supplemental motion was filed in response
to appellant=s second
amended petition which itself was filed less than twenty-one days before the
submission date for the summary judgment motion.  Under those circumstances, appellees were required
to file a supplemental motion for summary judgment prior to the submission date
in order to address the new claims if they wished the court to be able to
dispose of the entire case.  Smith v.
Atlantic Richfield Co., 927 S.W.2d 85, 88 (Tex. App. B Houston [1st Dist.] 1996, writ
denied).

We
note further that while appellant filed a motion in opposition to the request
for leave to file the supplemental motion on the day of submission, utilizing
the same arguments and authorities cited to this Court, the record does not
reflect that appellant ever filed any controverting affidavit claiming that she
was prejudiced by this late filing or that she was unable to properly prepare
or present controverting affidavits in response to the supplement, nor did she
ever request a continuance to do so.  By
failing to file such affidavit or request a continuance, appellant has waived
any complaint.  Pankow v. Colonial
Life Ins. Co., 932 S.W.2d 271, 275 (Tex. App. B
Amarillo 1996, writ denied); Gonzalez v. Nielson, 770 S.W.2d 99, 101
(Tex. App. B Corpus
Christi 1989, writ denied); Manhattan Constr. Co. v. Hood Lanco, Inc., 762
S.W.2d 617, 619 (Tex. App. B
Houston [14th Dist.] 1988, writ denied). 


Even
without a waiver, under the circumstances of this case, we do not find that it
was an abuse of discretion for the trial court to have granted leave to file
the supplemental motion for summary judgment and to have considered the
same.  We overrule this issue. 

                                                 B.
The Summary Judgment Evidence








Appellant
next argues that the summary judgment motion was not properly considered
because it was not supported by conclusive evidence.  Specifically, appellant argues that there was
no summary judgment evidence submitted by appellees because unverified
documents and references to the record of the prior case are not competent
evidence.[43] 

Review
of the documents attached to appellee=s
motion for summary judgment indicates that all but three were properly allowed
as summary judgment proof under the rules.[44]  The only documents that were not apparently
in permissible form were exhibits four (the order on the summary judgment in
the prior civil case), six (the order on the motion for new trial in the prior
civil case) and eight (the petition for habeas corpus).  The first of these was verified by appellant
and offered in her own response to the summary judgment motion and hence we
find it proper summary judgment evidence. 
Thus, there are only two questionable documents for our consideration B the motion for new trial order and the
habeas corpus petition. 








Appellees
argue that they asked the trial court to take judicial notice of the exhibits
as true and correct copies of court records and that the trial court=s grant of that request sufficed to
render them properly before the court for consideration.[45]  
The authorities cited by appellees do not support their
contentions.  Generally, a court may take
judicial notice of records of its own or another court=s
records (such as in the habeas corpus case) when they are provided by the
proponent, however, this does not relieve the proponent from the responsibility
of providing them to the court in a form acceptable for summary judgment
proceedings, i.e. either sworn to or certified. Gardner v. Martin,
345 S.W.2d 274, 276-77 (Tex.
1961); Murillo v.Valley Coca-Cola Bottling Co., 895 S.W.2d 758, 762
(Tex. App. B Corpus
Christi 1995, writ denied); Serna v. Reyna, 418 S.W.2d 701, 703 (Tex.
Civ. App. B Corpus
Christi 1967, writ ref=d
n.r.e.).  As the habeas corpus petition
and the order on the motion for new trial in the underlying civil suit were
neither verified nor certified, they were not proper summary judgment evidence
and we sustain this issue as to those two documents and will not consider them
for purposes of the review of the trial court=s
decision to grant summary judgment. 

                                                                   C.
Limitations








Appellees
moved for summary judgment under Texas Rule of Civil Procedure 166a(c)
(traditional summary judgment).  Under a
traditional summary judgment under Texas Rule of Civil Procedure 166a(c), the
movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law.  American Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  In deciding whether there is a disputed
material fact issue precluding summary judgment, evidence favorable to the
nonmovant will be taken as true.  Id.  Every reasonable inference must be
indulged in favor of the nonmovant and any doubts must be resolved in favor of
the nonmovant.  Id.  Evidence favoring the movant=s position will not be considered
unless it is uncontradicted.  Great
Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47
(Tex. 1965).  In the case of an affirmative defense, such
as limitations, the movant must establish all the elements of an affirmative
defense as a matter of law.  City of Houston
v. Clear Creek
 Basin Auth., 589
S.W.2d 671, 678 (Tex. 1979). 

A
defendant moving for summary judgment on the affirmative defense of limitations
has the burden of conclusively establishing that defense.  Velsicol Chem. Corp. v. Winograd, 956
S.W.2d 529, 530 (Tex. 1997).  If the plaintiff=s
pleadings do not affirmatively show that the limitations period has run, the movant
has the burden of proving that the suit is barred by limitations as a matter of
law.  Gibson v. John D. Campbell &
Co., 624 S.W.2d 728, 731 (Tex. App. B
Fort Worth 1981, no writ).








A
cause of action generally accrues at the time when facts come into existence
which authorize a claimant to seek a judicial remedy.  Murray
v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex.
1990).  In the case of a constructive
trust, limitations begin running at the inception of the trust.  Powers v. McDaniel, 785 S.W.2d 915, 918
(Tex. App. B San
Antonio 1990, writ denied).  To toll
limitations in a constructive trust case, there must have been a fraudulent
concealment of facts.  Id.


Fraudulent
concealment is based on the doctrine of equitable estoppel and estops a
defendant from relying on the statute of limitations as an affirmative defense
to a plaintiff=s claim
where the defendant fraudulently conceals the existence of a cause of action.  Borderlon v. Peck, 661 S.W.2d 907, 908 (Tex.
1983).  This is because a defendant
should not be permitted to avoid liability for his actions by concealing his
wrongdoing until limitations have run.  S.V. v. R.V., 933 S.W.2d 1, 6 (Tex.
1995).  Accordingly, the doctrine of
fraudulent concealment cannot apply where the defendant himself does not have
knowledge of the facts supposedly concealed. 
HTM Rests., Inc. v. Goldman, Sachs & Co., 797 S.W.2d 326, 329
(Tex. App. B Houston
[14th Dist.] 1990, writ denied); Raney v. Mack, 504 S.W.2d 527, 534
(Tex. Civ. App. B Texarkana
1973, no writ).








Appellant
did not plead fraudulent concealment and under the facts presented in her
petition, such doctrine is not availing as she does not allege any facts which indicate
that appellees concealed any wrongdoing on their part which would give rise to
a cause of action.  The only wrongful
conduct alleged by appellant is on the part of the state investigators and
prosecutors who were not defendants in this suit.  Hence the accrual of appellant=s claim for constructive trust was not
deferred by any tolling rule.[46]  The statute of limitations thus began running
on appellant=s claim
for constructive trust on the date the alleged trust came into being B May
 7, 1991 B
the date of the summary judgment in the underlying suit.  Powers, 785 S.W.2d at 918.

Since
appellant did not file her constructive trust claim until 2000, we need not
determine whether a four-year[47]
or two-year[48] statute of
limitations would apply. Appellant=s
claim for a constructive trust based on unjust enrichment was untimely and the
trial court did not err in granting summary judgment as to that claim on the
grounds of limitations. 

                                                           REMAINING
ISSUES

As
our dispositions of the first and fourth issues before us are dispositive, we
do not reach the remaining issues.  Tex. R. App. P. 47.1.

                                                                 CONCLUSION

Having
found that the trial court properly dismissed the bill of review claim under
special exceptions for failure to state a claim and finding that the constructive
trust claim was barred by limitations and summary judgment properly granted on
that ground, we affirm the judgment of the trial court.                        

ERRLINDA
CASTILLO

Justice

Publish

Tex.
R. App. P. 47.3.

 

Opinion delivered and filed

this 11th day of
April, 2002.











[1]Former Justice Maurice Amidei assigned to this Court by the Chief Justice of the
Supreme Court of Texas pursuant to Tex.
Gov=t Code Ann. ' 74.003 (Vernon 1998).





[2]
On January 10, 1975, Hale and Bill Mowbray were divorced by decree
entered in the 107th 

District Court of Cameron County in cause number 58,
353-A, styled, AIn the Matter of the Marriage of Virginia B. Mowbray
and J. William Mowbray, Jr. and in the interest of Kristin Virginia Mowbray.@  Hale remarried
after the divorce.  Kristin is addressed
by her married surname.  





[3] A $10,000 policy with Employers Health Insurance
Company  insuring Bill Mowbray in the
event of accidental death is identified but not a subject of the underlying
dispute.  





[4] The
agreement had been a separation agreement ultimately Afiled concurrently with the decree.@  





[5] The form, dated July 11, 1986, reflects the signature of a witness, Yolanda Ruiz,
on the same

date.  





[6]
The administrator is identified as the Aduly qualified representative of Bill Mowbray=s estate

appointed by County Court at Law No. 1 of Cameron County in Probate Cause No. 25,428-A.@





[7] Jeanne Mowbray is identified as an Ainvoluntary plaintiff@ Ainasmuch as she, as well as Avery,

is a statutory beneficiary under Tex. Civ. Prac. &
Rem. Code 71.004 (the ATexas Wrongful Death Act@) and,
in her absence, complete relief cannot be afforded among parties already herein
. . . .@  The petition
alleges that Avery Abrings this suit for the benefit of all persons who
are beneficiaries under the Texas Wrongful Death Act, including Jeanne, as well
as herself.  





[8] Avery=s disabilities of minority were apparently removed by
judgment of the 197th District Court in cause number 10-87-4555-C.





[9] The motions were titled as follows: (1) Fourth Motion
for Partial Summary Judgment (Declaring

the Rights of the Parties as to Life Insurance
Proceeds); (2) Motion for Reasonable Expenses Under Tex. R. Civ. P. 166a(g); (3) Motion for Costs and
Reasonable and Necessary Attorney=s Fees
under Tex. Civ. Prac. & Rem. Code Ann. 37.009 (Vernon 1986) Insofar As Concerns Declarations Pertaining to
Insurance Proceeds; and (4) Restated Motion for Severance to Separate the
Foregoing Matters from the Balance of the Case.  





[10]
The first count claimed Virginia Hale, as
trustee for Avery, had an equitable interest in the

$130,000 proceeds from Transamerica policy number
5381535. The third count sought a declaration that Fredda Sue Mowbray forfeited
all interest in the proceeds payable under all the policies in question in
willfully bringing about the death of Bill Mowbray, that all proceeds should be
paid to Avery, and that by her criminal conviction  Fredda Sue Mowbray was Abarred and collaterally estopped from claiming that
his death was the result of anything other than intentional homicide .@   The seventh count sought declaration of the Arights, status and legal relationship between the
parties with respect to the insurance policies and estate . . . in such a
manner as will terminate the controversy.@  





[11] This section provides that the interest of a
beneficiary in a life insurance policy or contract is forfeited when the
beneficiary is the principal or an accomplice in willfully bringing about the
death of the insured. Tex. Ins. Code
Ann. art. 21.23 (Vernon
Supp. 2002).





[12] While the style of the order reflects that it was
entered by the 107th District Court in the cause number that had been pending
in that court, it is signed by the judge of the 197th District Court and the
cause number partially crossed out to change the AA@ (reflective of the 107th District Court) to AC@ (indicating the 197th District Court).





[13]
The judgment recites that Afinal judgment with respect to such insurance proceeds
should be

entered in favor of the Plaintiffs, Kristin V. Mowbray
and Virginia Hale, individually and as Trustee under the Kristin Virginia
Mowbray First Trust Agreement dated October 21, 1987.@  The record
before us does not contain the First Trust Agreement.  In the second amended petition, plaintiff
Hale is identified as AKristin=s mother
and Trustee and the divorced wife of Bill Mowbray.@  





[14] The final judgment incorporates the trial court=s granting Plaintiffs= Second
Motion for Partial

Summary Judgment Respecting Proceeds of the West Coast
Insurance Policy on September 23, 1988 and denying a motion for severance on that same
date.  





[15] The orders identified do not appear in the record
before us.  





[16] Apparently this motion was denied on June 10, 1991,
however the only evidence of this is an uncertified copy that, as we later
discuss, was not properly before the trial court, and thus not properly before
us.





[17] The allegations, as amended, are italicized
here.  





[18] The joint motion for summary judgment alleged four
grounds.  In their first ground, they
argued that, pursuant to section 16.051, Tex.
Civ. Prac. & Rem. Code, Mowbray=s
petition for bill of review was filed four years too late; she was not entitled
to argue the discovery rule or fraud; she was aware of her injury in 1991; she
admitted that Avery and Hale did not conceal anything or mislead her; and
limitations were not tolled until she was acquitted.  The second ground asserted that Mowbray was
not prevented from presenting her defenses to either the trial court or the
court of appeals as a result of any fraud, accident or mistake attributable to
Avery and Hale; Mowbray admits that they were not responsible in any way for
the original conviction or alleged concealment of evidence; the district
attorneys and agents of the Department of Public Safety are not officers of the
197th District Court; the alleged acts of the district attorney in an
independent proceeding in another court do not create any grounds to set aside
the trial court=s final judgment; and there was no Aextrinsic fraud.@  The third ground contended that (1) nothing
prevented Mowbray from presenting her defenses to either the 197th district
court or the court of appeals other than her own decision not to submit
evidence and not to prosecute an appeal, and (2) she failed to exercise due
diligence. 





[19] The record shows that Fredda Mowbray contested the
imposition of a constructive trust in

cause number 11-87-5123-A.  





[20] Mowbray objected to AAvery
and Hales=s unverified documents and references to the record of
the prior case@ and that no Averification
or affidavit was attached to the motion or its amendment.@  She added that
the trial court Ahas not judicially noticed any of this evidence.@  She moved the
trial court to strike the evidence from the summary judgment record.





[21]
This argument had been made in the brief
in support of the special exceptions and in the

amended motion for summary judgment.  





[22] The order reads: 

 

BE IT REMEMBERED that on January 5, 2000, came to be heard Defendants= Special

Exceptions
to Plaintiff=s Second Amended Original Petition, and upon
consideration of the same, the Court is of the opinion same should be granted.

 

BE
IT FURTHER, REMEMBERED that on January 20, 2000,  came to be
considered:

 

(1)
Defendants= Motion for Summary Judgment (as Amended); 

(2)
Defendants= Supplement to Amended Motion for Summary Judgment;
and

(3)
Defendants= Request to Take Judicial Notice. 

 

Upon consideration of the Motion, the Response, and
the evidence and public records on

file,
the Court is of the opinion to take judicial notice of and consider the records
as Defendants request, to grant Defendants leave to file their Supplement to
Defendants= Amended Motion for Summary Judgment less than 20 days
before submission and to grant summary judgment for Defendants.

Therefore, based both on Special Exceptions and the
Motion for Summary Judgment, as

supplemented,
Plaintiff=s claims against Defendants should be dismissed. 

It is therefore ORDERED that all claims of Plaintiff,
FREDDA SUE MOWBRAY, against

Defendants,
KRISTEN AVERY and VIRGINIA HALE, are hereby dismissed, costs taxed to the
Plaintiff. 

 





[23]
The order sustaining the special exceptions and
dismissing the case was issued in the same

document which granted Appellee=s motion for summary judgment. No specific grounds for
either order were given although the trial court did state that Abased on both Special Exceptions and the Motion for
Summary Judgment, as supplemented, Plaintiff=s claims
against Defendants should be dismissed.@





[24]  Summary judgment
is also proper under these circumstances or where a pleading deficiency is of
the sort that cannot be cured by amendment. Friesenhan v. Ryan, 960
S.W.2d 656, 658 (Tex. 1998)(citing Texas Dept.  of Corr.
v. Herring, 513 S.W.2d 6, 10 (Tex. 1974)). 





[25]
Although the court in HECI refers to Athe cause of action@ of
unjust enrichment, it also refers

to unjust enrichment as a Aremedy,@ Abasis for recovery@and
speaks of a Acause of action based on@ unjust enrichment. 
HECI Exploration Co. v. Neel, 982 S.W.2d 881, 891 (Tex. 1999) (emphasis ours). We do not see these statements
as recognition of unjust enrichment as an independent cause of action, but
simply as a reiteration of the well established principle that a suit for
restitution may be raised against a party based on the theory of unjust
enrichment.





[26]  An
argument was also made that unjust enrichment is not an independent cause of
action.  As this is a correct statement
of the law, and since we do not find that unjust enrichment was pled as an independent
cause of action in this case, we do not address this argument but simply
consider unjust enrichment in its proper role as the legal theory that is the
basis for the recovery sought by way of the constructive trust.





[27]
Specifically, there must be:

 

(1)
Breach of an informal relationship of special trust or confidence arising 

prior
to the transaction in question, or actual fraud; 

(2)
Unjust enrichment of the wrongdoer;

(3)
Tracing to an identifiable res.

 

In the Matter of Monning Dept. Stores,
Inc., 929 F.2d 197, 201 (5th Cir.
1991) (citations omitted); Meadows v. Bierschwale, 516 S.W.2d 125,
128-130 (Tex. 1974)(constructive trust can arise out of actual fraud, not just
confidential or fiduciary relationship); Thigpen v. Locke, 363 S.W.2d
247, 250 (Tex. 1962)(Aequity will impose a constructive trust to prevent one
who obtains property by fraudulent means from being unjustly enriched.@); Omohundro v. Matthews, 341 S.W.2d 401, 410
(Tex. 1960) (AA fundamental concept of a constructive trust is the
prevention of unjust enrichment@).  Without
proof of the necessary elements, a constructive trust is not properly imposed. Estate
of Graham, No. 13-00-334-CV, 2001 Tex. App. LEXIS 8481, *29 n.1 (Tex. App. B Corpus Christi 2001, no pet. h.)(ABecause we have found no fraud, constructive trust is
not available@). 





[28] This last requirement Aunmixed
with any fault or negligence of his own@ refers
to the necessity of the petitioner to have not been responsible for the failure
to advance the meritorious defense which he claims to have been prevented from
making by the actions of the opposing party. Although often discussed together,
this is distinct from the Adue diligence requirement@ which is imposed upon a petitioner in order to be
entitled to seek relief under a bill of review.  Under the latter doctrine, before a
petitioner is entitled to initiate a claim for a bill of review, he must allege
and prove that he has exercised all due diligence to pursue all adequate legal
remedies to the judgment in controversy or show good cause for failing to
exhaust the same.  Caldwell v. Barnes,
975 S.W.2d 535, 537 (Tex. 1998); Griffith v. Conrad, 536 S.W.2d 658, 661
(Tex. Civ. App. B Corpus Christi 1976, no writ).  If a petitioner had legal remedies which were
available but ignored, relief by equitable bill of review is unavailable.  Wembley Inv. Co. v. Herrera, 11 S.W.3d
924, 927 (Tex. 1999); French v. Brown, 424 S.W.2d 893, 895 (Tex. 1967).  One
with an available appeal who fails to pursue that remedy is not entitled to
seek relief by way of bill of review.  Rizk v. Mayad, 603 S.W.2d 773, 775 (Tex. 1980).  

In the present case, in addition to their
arguments that appellant did not assert facts showing that her failure to
advance her actual innocence defense was barred by the district attorney=s actions, appellees have advanced Adue diligence@
arguments.  These arguments were not
advanced below in  the motion for special
exceptions.  As Adue diligence@
arguments are not pertinent to any question before us as to the special
exceptions issue, we do not consider them at this time. 





[29]
Appellant has argued for a much broader
interpretation of official mistake than that supported

by
the case law of this state.  Although on
appeal appellant argues that she was barred from presenting her contention of
actual innocence at the original trial, the record reflects that, in fact, she
did present this defense and even filed a motion for new trial asserting that
the trial court erred in granting summary judgment because an issue as to actual
innocence remained.  Accordingly,
appellant cannot argue that she was prevented from presenting her chosen
defense or from filing a motion for new trial or an appeal.  Rather, her argument can only be that an
official mistake prevented her from presenting her defense in a Ameaningful manner@ (as she
alleged in her petition for bill of review) or from filing an effective
appeal (which she claims not to have pursued because it was Adoomed@ by the conduct which led to her conviction).  Appellant=s
citation to Bridgeman v. Moore, 183 S.W.2d 705 (Tex. 1944), does not
support her contention that Aofficial mistake@ should
extend to any Abreakdown in the judicial process@ as the dicta she relies upon in that case merely
stood for the proposition that where a court functionary (in that case, a
judge) committed an official error that prevented a party from filing an appeal
(in that case because no notice was given of the signing of the judgment), a
bill of review would lie B a position completely consistent with the narrow
interpretation which Texas courts have given the Aofficial
mistake@ exception.  See Petro-Chemical Transport, Inc. v. Carroll,
514 S.W.2d 240, 244 (Tex. 1974).

We note also that the conduct appellant
complains of occurred not in the underlying case but in a completely
different proceeding, a fact unprecedented in our review of the case law,
perhaps because the supreme court has always strictly limited Aofficial mistake@ to
official errors which prevented actual participation in a trial or an appeal
of the case. See discussion supra. 
But see In the Interest of T.R.R., 986 S.W.2d 31, 37 (Tex. App. B Corpus Christi 1998, no pet.)(finding that the trial
court=s failure to appoint an attorney ad litem at a
termination proceeding in which appellant participated, to be an official
mistake for the purposes of a bill of review).                      





[30] In her original petition, appellant had alleged only
that the Aunconstitutional conduct@ of Astate

officials@ prevented her from asserting her meritorious defense of
acquittal at the original summary judgment proceeding in the underlying civil
case.  Although not defining state
officials in that paragraph, earlier in the petition she complained that her
original conviction was procured by the Awrongful
conduct of the official state investigators and prosecutors and their
conspirators.@  In her second
amended petition, which is the one we consider today, she states that the
original conviction was procured by Athe
wrongful conduct of officers of the court and their conspirators@ and alleges that she was prevented from asserting her
defense due to Aunconstitutional conduct and extrinsic fraud of
officers of the court in her criminal trial.@  In this petition, she does not delineate
specifically whom she is referring to as being Aofficers
of the court in her criminal trial@ B an extraordinarily broad description. However, no
special exception was raised on this ground and as all parties appear to agree
that this refers to the district attorney (and apparently the assistant
district attorneys) in this case, we will likewise assume that these are the Aofficers of the court@ of
which she complains.

We also note that nowhere in this petition
does appellant ever utilize the term official mistake or claim that the
district attorney failed to perform some official duty upon which she
relied and which caused her to fail to assert her defense.  However, the failure to state a claim
specifically in these terms is not before us and as both parties assume that
she did make a claim of official mistake and only dispute whether the actions
complained-of can, in fact, constitute official mistake for the purposes of a
bill of review, it is that question which we will consider.





[31]
Baker v. Goldsmith, 582 S.W.2d 404, 407 (Tex. 1979).





[32] Id.





[33] Vogel v. Vogel, 405 S.W.2d 87, 90 (Tex. Civ.
App. B San Antonio 1966, no writ).





[34]
West Columbia Nat=l
Bank v. Griffith, 902 S.W.2d
201, 205 (Tex. App. B Houston [1st 

Dist.] 1995, writ denied).





[35] Nichols v. Jack Eckerd Corp., 908 S.W.2d 5, 8
(Tex. App. B Houston [1st Dist.] 1995, no writ).





[36] Transworld Fin. Serv. Corp. v. Briscoe, 722
S.W.2d 407, 408 (Tex. 1987).





[37]
Gracey v. West, 422 S.W.2d 913, 916 (Tex. 1968).





[38]
Matthews Trucking Co., Inc. v. Smith, 682 S.W.2d 237, 239 (Tex. 1984).





[39] Buddy AL,@ Inc. v. Gen. Trailer Co., 672 S.W.2d 541 (Tex. App. B Dallas
1984, writ ref=d n.r.e.) and City of Laredo v. Threadgill,
686 S.W.2d 734 (Tex. App. B San Antonio 1985, no writ). Like the court in Matthews
v. Harris Methodist, 834 S.W.2d 582, 584 (Tex. App. B Fort Worth 1992, writ denied), we find these
decisions unpersuasive.





[40] Seacoast, Inc. v. LaCouture, No.
03-00-00178-CV, 2000 Tex. App. LEXIS 8486 (Tex. App. B Austin
2000, pet. denied)(not designated for publication).





[41] See
Weston v. Van Meter, 297 S.W.2d 302, 304 (Tex. Civ. App. B Texarkana 1956, no writ), citing the well-known
proposition that bills of review are watched with Aextreme jealousy,@ grounds
of which will be Anarrow and restricted@ and the
rules not relaxed Amerely because it may appear in some particular case
that an injustice has been done.@





[42]
Appellant=s reliance on Pierce v. State, 12 Tex. 210 (Tex. 1854) and Meshell v. State,739 S.W.2d 246, 253
(Tex. Crim. App. 1987), is misplaced. The language relied upon by appellant in Pierce
is not actually part of the holding but of the recitation of the
arguments.  The decision in Meshell merely
acknowledges that the office of prosecuting attorneys was created under the
judicial department rather than the executive or legislative.  This does not make district attorneys part of
a court in any greater way than any other attorney.  As stated by the court of criminal appeals in
remarking on the general relationship between attorneys and judges:

 

The relationship of courts and attorneys, bench and
bar, are reciprocal, and each, in their proper sphere, is clothed with powers,
rights, and privileges which are to be recognized and respected by the other. 

 

Ex
parte Duncan, 62 S.W. 758, 762 (Tex.
Crim. App. 1901).

 

The third case cited by appellant, State
v. Johnson, 12 Tex. 231 (Tex. 1854), simply stands for the unremarkable proposition
that a district attorney, like all attorneys in the state, is an officer of the
court.  This does not provide any
authority for finding that the district attorney, by virtue of his office as
district attorney, is a court official.





[43] As for the complained-of references to the record of
the prior case, this objection is not specific enough for our consideration and
so we deem the complaint waived. 
Appellant does not cite any particular objectionable reference and we
have no evidence that the trial court considered any references to a prior case
mentioned in the summary judgment motion apart from the attached summary
judgment documents which were referred to by said references and which we
consider herein.





[44] Documents
submitted as summary judgment proof must be sworn to or certified unless they
fall under the discovery documents exception. Tex.
R. Civ. P. 166a(f), 166a(d). 
Exhibits one, two, four, five, and ten through fifteen were
certified.  Exhibits seven and nine were
discovery documents in the same case and so did not need to be authenticated to
serve as summary judgment proof.  Tex. R. Civ. P. 166a(d); McConathy
v. McConathy, 869 S.W.2d 341, 342 (Tex. 1994); but see Blanche v. First Nationwide
Mortgage Corp., No. 05-00-01327-CV, 2002 Tex. App. LEXIS (Tex. App. B Dallas, March 14, 2002, no pet. h.)(holding that McConathy rationale
was limited to depositions). 





[45]
While appellant=s
response to the motion for summary judgment objected to this evidence, there is
no indication in the record that appellant sought a ruling on these
objections.  Failure to obtain written
rulings on objections to the form of summary judgment evidence waives the
issue, unless the record reflects an implicit ruling by the trial court.  Jones v. Ray Ins. Agency, 59 S.W.3d 739,
752-53 (Tex. App. B Corpus Christi 2001, pet. filed).  The mere grant of a motion for summary
judgment is not an implicit ruling on objections outside of a specific notion
in the record indicating that there was a ruling. Id. In the present case, the ruling on the motion for
summary judgment does present an implied ruling as the court states, AUpon consideration of the Motion, the Response, and
the evidence and public records on file, the Court is of the opinion to take
judicial notice of and consider the records as Defendants request . . . A.  We read this
as at least an implicit overruling of appellant=s
objections below. See Frazier v. Khai Loong Yu, 987 S.W.2d 607, 610
(Tex. App. B Fort Worth 1999, pet. denied).





[46] Appellant likewise did not plead the discovery rule
in reference to her constructive trust claim

nor do we find it to be applicable to her constructive
trust claim.  See Powers v.
McDaniel, 785 S.W.2d 915, 918 (Tex. App. B San
Antonio 1990, writ denied)(limitations in a constructive trust case tolled only
by a fraudulent concealment); S.V. v. R.V., 933 S.W.2d 1, 4-6 (Tex. 1996)(discussing the differences between fraudulent
concealment and the discovery rule). 





[47] Carr v. Weiss, 984 S.W.2d 753, 762 (Tex. App. B Amarillo 1999, pet. denied)(considering

constructive trust claims to be under the same
limitations as suits to enforce or arising out of a breach of trust). 





[48]
HECI Exploration Co. v. Neel, 982 S.W.2d 881, 885
(Tex. 1998)(unjust enrichment claims).